GEORGE W. HIGGINS and Others v. ALBERT BERG.

October 17, 1898.

Nos. 11,490—(261).

Official Ballot— G. S. 1894, § 30—Determining Highest Number of Votes Polled—Duplicate Nominations by Two Parties.

Held, that so much of the statute, G. S. 1894, § 30, as provides that the method of determining the largest number of votes polled at the last preceding general election by a political party shall be by taking the average vote received by "such of its candidates as were not indorsed by any other party," applies only to cases where individual candidates of one party are indorsed by another party, and not to a case where two parties maintaining independent organizations separately nominate a duplicate ticket; that is, where each of the parties nominate all of the candidates of the other. In the latter case the officer charged with the duty of arranging and printing the official ballot may resort to any rule or method to ascertain approximately the vote polled by each party, which he deems to be fair and practicable; for example, he may apportion the combined vote between them on the basis of the average vote polled by each at the last general election next before the 'nomination by them of a duplicate ticket, and unless he acts in the premises fraudulently or unfairly, or clearly upon an improper and prejudicial basis, his decision will not be disturbed by the courts.

George W. Higgins, A. H. Gilmore, Archibald A. Stone, Delbert U. Weld and Daniel W. Doty petitioned the supreme court for an

order requiring the respondent Berg, as secretary of state, to place the names of petitioners, as candidates of the Prohibition party for the offices of governor, lieutenant governor, secretary of state, state auditor and attorney general, respectively, in the second place in the list of candidates for each office instead of in the third place in such list. The proceedings mentioned in the opinion were had therein.   Order to show cause discharged.  ·

*Daniel W. Doty*, for petitioners.

*H. W. Childs*, Attorney General, for respondent.

START, C. J.

The petitioners are the candidates of the Prohibition party for the offices of governor, lieutenant governor, secretary of state, state auditor and attorney general, respectively, to be voted for at the next general election.   The party made no nominations for justices of this court, hence all of its candidates are united in the petition herein.   The petition alleges that at the last general election the Republican party polled the highest number of votes and the Prohibition party the next highest number of votes, 7,000 in all, therefore it is entitled to the second place on the official ballot, but that the respondent as secretary of state in making up the sample ballot had made a mistake which he refuses to correct, in that he has assigned to the petitioners the third place in the list of party candidates on the ballot.

Upon the presentation of the petition to a justice of this court pursuant to the provisions of G. S. 1894, § 48, an order was made directing the respondent to make the correction or show cause before the court why he should not do so.

The respondent appeared by the attorney general, who suggested to the court that it had no jurisdiction in the premises, for the reason that the respondent belonged to the executive department of the state government as defined by the constitution, and therefore was not subject to the direction and control of the judiciary, a co-ordinate department of the state government, as to any duties imposed by law upon him as secretary of state.   After making the suggestion the respondent filed his return to the order, with the statement that he submitted the whole matter to the court and

was ready to make any corrections in the official ballot the court might direct, but further suggested that unless such directions, if any, were promptly given, he would be unable to comply with the law as to the printing and distribution of the official ballots. The petitioners admitted the facts stated in the return, and the cause was submitted to the court for its decision upon the record.

The question of jurisdiction is one of great importance, and it must be admitted that the decisions of this court prior to the case of Hayne v. Metropolitan Trust Co., 67 Minn. 245, support the suggestion of the attorney general, but in that case it was intimated that this court had gone to the extreme length in holding executive officers of the state, especially those other than the governor, exempt from the control of the court, and refused to apply the doctrine to a case against the state auditor where it was sought to compel him to perform an official act that in no manner affected the interest of the state, but the performance of which was essential to the protection of the legal rights of individuals. Whether the case at bar falls within the principle announced in that case, and if not, whether the earlier cases should be so modified as to exclude this case from the general doctrine therein held, is a grave question involving a careful re-examination of the whole subject and a definite and accurate statement of the exceptions to the general doctrine, if any are to be made. The absolute necessity of a speedy decision of this case makes it impracticable to enter upon such an examination of the question. We therefore assume, without so deciding, that the statute, by virtue of which this proceeding was instituted, is constitutional. It is the mandate of the legislature and presumed to be constitutional.

Touching the merits of the case the facts are briefly these: Prior to the general election of 1896 the Democratic party and the People's party were separate political parties; each of them at the then last general election polled more than one per cent. of the entire vote cast in the state; each party separately nominated the same candidates for the several state offices to be voted for at the general election of 1896, and their names were placed on the official ballot for that year. The average vote polled at such election by the two parties for the candidates so nominated by them ex-

ceeded 140,000, while the average vote polled by the Prohibition party did not exceed 7,000. The Democratic and People's parties the present year again each separately nominated the same candidates for state officers to be voted for at the next general election, and certificates of nomination by each party were filed with the secretary of state, who gave their candidates the second place in the list of party candidates on the official ballot and assigned the petitioners to third place.

The right of the candidates of the Democratic and People's parties, respectively, to a place on the ballot is not here questioned, and the sole question before us is whether the Prohibition party is entitled to the second place on the ballot. Its claim is that it polled the second highest vote 'at the last general election. This claim is based upon G. S. 1894, § 30, which provides that:

"The first name printed for each office or group of names, if more than one is to be voted for for the same office, shall be that of the candidate of the political party which at the last preceding general state election polled the largest number of votes; the same to be determined by the average vote received by such of its candidates as were not indorsed by any other party."

The application which counsel makes of this statutory rule is substantially this: If the vote actually polled by the Democratic and People's parties be excluded, the Prohibition party confessedly polled the second highest vote. The combined vote of the two parties must be excluded because each party indorsed all of the candidates of the other, hence there were no unindorsed candidates voted for by either party, and there could be of necessity no average vote of the candidates of either party who "were not indorsed by any other party." That is to say, although the two parties voted for the same candidates, who in fact received an average vote twenty times larger than that given to the candidates of the Prohibition party, yet legally the latter polled the highest vote.

If such be the correct construction of the statute, it leads directly to absurd and unjust results. It may be safely assumed that whenever any proposed construction or application of a statute leads to such results it is wrong, for such a purpose cannot be imputed to the legislature. The conclusion claimed rests upon the unten-

able premise that the statute applies to a case where two independent and legal political parties separately nominate identically the same ticket. Neither the words of the statute nor its history justify the assumed premise.

This statute was first enacted in 1893. Prior to this time the position of the names of party candidates on the ballot was determined by the order in which the certificates of nomination were filed. Laws 1899, c. 3, § 23. Then by lot. Laws 1891, c. 4, § 41. Lastly by the present method. Laws 1893, c. 4, § 25 (section 30, supra). Previous to the adoption, in 1893, of the largest number of votes polled by a political party as the basis for determining its place on the ballot, there had been instances of individual indorsement of one or more of the candidates of one party by another, notably judicial candidates, but there had been no case where two independent parties had separately nominated a complete duplicate ticket. Advised by the past, the legislature knew that it must provide for cases of individual indorsements, but it had no reason to anticipate the nomination of a complete duplicate ticket by two political parties maintaining separate organizations. It therefore provided for the former case but not for the latter. The language of the statute in question also supports this conclusion. The words used are: "The same (the largest number of votes polled by a political party) to be determined by the average vote received by such of its candidates as were not indorsed by any other party." This language necessarily assumes a case where a part only of the candidates were indorsed. Our conclusion then is that the statutory rule in question applies only to cases of individual indorsements of the candidates of one political party by another party and not to a case like this one where two parties severally nominate a duplicate ticket.

Although in the latter case there is no statutory rule for ascertaining the approximate vote polled by the respective parties, still the position of the names of all candidates on the ballot must be determined by the vote polled by their respective parties. But there being no prescribed rule in such a case the officers charged with the duty of arranging and printing the official ballot may resort to any rule or means to ascertain approximately the vote

polled by each party which he deems to be fair and practicable; for example, he may apportion the combined vote between them on the basis of the average vote polled by each at the general election next before the nomination by them of a duplicate ticket, and unless he acts in the premises fraudulently or unfairly, or clearly on an improper and prejudicial basis, his decision will not be disturbed by the courts.

It follows that the secretary of state correctly held in this case that the Prohibition party did not poll at the last general election the second largest vote, and therefore it was entitled to third place only on the official ballot. He was not at liberty in determining the question to ignore the combined vote polled by the Democratic and People's parties for the same candidate. In this particular case it is unnecessary to make any apportionment of the combined vote between the respective parties, because such vote was at least 140,000, while that of the Prohibition party did not exceed 7,000. It is therefore absolutely certain that one, if not each, of the two parties polled a greater number of votes than 7,000, and the sole question here is as to the order in which the names of the candidates shall be placed on the ballot, and it is sufficient for the purposes of this case that at least one of the two parties nominating the duplicate ticket polled more votes than the Prohibition party, without determining which one.

Order to show cause discharged on the merits.