CHARLES G. DAVIDSON v. PETER E. HANSON.[1]

October 10, 31, 1902.

Nos. 13,351—(268).

**Nomination of State Officers—Primary Election.**

The primary election law of this state (Laws 1899, c. 349) as amended by Laws 1901, c. 216, has not changed the previous method, under the so-called "Australian Ballot System" (Laws 1893, c. 4; G. S. 1894, c. 1), of nominating candidates for state officers. Such candidates are excepted from the operation of the primary law, and are still as formerly placed in nomination either through a party convention or a petition of electors.

**Nomination by Petition.**

The secretary of state is required to recognize a petition or certificate of electors having two thousand or more qualified voters thereon as a

[1] Reported in 91 N. W. 1124; 92 N. W. 93.

means of nominating candidates for state offices, with the incidental right of the petitioners on the certificate of nomination to designate a proper party name for the candidate placed on the ballot.

Party Name. -

Under the provisions of Laws 1901, c. 312, a political party, however, cannot appropriate to itself any part of the name of another political organization, nor have its candidates designated thereby on the official ballot; and this restriction extends to parties who maintain their political existence either through a nomination by convention or a petition of electors.

Socialist-Labor Party.

The "Socialist-Labor" party, so called, is a political organization in this state, and, while it could not, by failure to poll sufficient votes at the last general election, secure a nomination for governor by convention, it might nominate a candidate therefor by a suitable petition, and thus secure for such candidate a place and party name on the official ballot.

Petition to the supreme court for an order directing Peter E. Hanson, as Secretary of State, to show cause why he should not omit from the official ballot the name of Jay E. Nash, as candidate for governor of the Socialist party, and insert on said ballot the name of Thomas Van Lear as candidate for governor of the Socialist-Labor party. At the hearing of the order to show cause an order was made as specified in the opinion of October 10.

*Squires & Griggs* and *George P. Metcalf*, for petitioner.

*W. B. Douglas*, Attorney General, *W. J. Donahower*, Assistant Attorney General, *George B. Leonard* and *John H. Steele*, for respondent.

The following opinion was filed October 10, 1902:

PER CURIAM.

This is an order requiring the secretary of state to show cause why he should not correct the ballots for state officers to be used at the next general election by placing thereon the name of Thomas Van Lear as a candidate for governor of the Socialist-Labor party, and to omit from such ballots the name of J. E. Nash as the candidate for governor of the Socialist party.

We simply announce at this time our conclusion on the question,

to be followed by a formal opinion hereafter, which is: Ordered, that the respondent, Peter E. Hanson, as secretary of state, place upon such ballots the name of Thomas Van Lear as the candidate for governor of the Socialist-Labor party; and, further, that he strike from such ballots the word Socialist after the name of J. E. Nash, as it appears thereon.

The following opinion was filed on October 31, 1902:

LOVELY, J.

Order to the secretary of state to show cause why corrections should not be made in the official ballot for the general election of 1902, issued under G. S. 1894, c. 1, § 48, and heard by the full bench, in accordance with the practice approved in Higgins v. Berg, 74 Minn. 11, 76 N. W. 788.

This and other hearings involving the preparation of ballots for voters by the officials charged with that duty have been recently considered under conditions requiring immediate action, in which decisions have necessarily been made in advance of handing down the opinions of the court therein.

The particular controversy here involves the right to use the names of political parties by candidates, with the incidental obligation of the secretary of state to recognize political organizations by such party names; the Socialist-Labor party seeking herein to prevent another political organization, previously known as the "Social Democratic" party, from placing its nominee for governor upon the state ballot under a newly adopted name, upon the claim that such course impairs the rights of the candidates of the Socialist-Labor party under Laws 1901, c. 312,—the "party-name-protection act."

Before referring to the specific statutory provisions involved, we should premise that candidates for elective state offices are nominated in only two ways: (1) By a convention; (2) by a certified petition of electors. Candidates for other than state offices—as district judges, congressmen, county officers, etc.—must be nominated under Laws 1899, c. 349, as amended by Laws 1901, c. 216, at a primary election, which supersedes and is a substitute for the pre-

vious method of nomination by convention. State v. Jensen, 86 Minn. 19, 89 N. W. 1126.

Since conventions are still retained for state officers, it is important to note certain features of the general election law which existed prior to the primary law to which we call attention. It is made the duty of the secretary of state in preparing the official ballot to place the names of a candidate thereon upon a certificate of the secretary of his party convention. This certificate shall, among other things, contain the name of the "party or political principle he represents" (expressed in not more than three words). G. S. 1894, § 37. Within the meaning of the general election law, a convention is defined to be

"An organized assemblage of delegates representing a political party, which, at the last general election   *   *   *   polled at least one per cent. of the entire vote cast in the state," etc. Section 39.

The remaining method of securing a place upon the state ticket is by a

"Certificate of nomination   *   *   *   signed by electors,   *   *   * [if for a state office,] to a number equal to one per cent. of the entire vote cast at the last preceding election,   *   *   *   Provided, however, that the number of signatures required in the case of any state officer shall not exceed two thousand." Section 40.

In preparing the official ballot the secretary of state is given directions as to its form and the method of grouping the candidates for different offices thereon, and it is specially provided that

"The name of each candidate shall be   *   *   *   preceded on the same line by the title of the office for which he is a candidate. *   *   *   Each name shall be followed on the same line   *   *   * by the party designation or politics of the candidate." Section 30.

It is important to note, in passing, that since 1893, when the Australian system was adopted in this state, it has been the usual practice by the officers promulgating the official ballots to attach party designations to the names of candidates upon a certified petition of electors without objection, indicating by a uniform practice in that respect that such was generally understood to be the proper course under circumstances where usage is an important evidence of legis-

lative intent. Occasionally candidates have ignored party affiliations, and have sought support upon individual claims solely. In such cases it has been the customary course for the officers making up the ballot to add to the name of the candidate the word "Independent," but whenever the electors in their certificate claimed a party designation it has been annexed to the name of the candidate; and, unless the provisions of the primary election law of 1899 (Laws 1899, c. 349) have distinctively defined a political party, and restricted the use of party names to nominations for state officers by conventions, or for other offices by the returns from the primary elections, we would naturally assume that the course previously in vogue was intended to be continued.

The Socialist-Labor party is a political organization, having been known in national and state politics since 1896. It did not, in fact, poll one per cent. of the entire vote of the state at the last general election. It, however, maintains a party organization, and has a state committee, whose secretary is the petitioner here. It secured a certificate of electors to the number of twenty-five hundred, nominating in proper form Thomas Van Lear for governor, and, with the legal fee, submitted such certificate to the secretary of state, requesting him to place his name, with the party designation "Socialist-Labor" attached, on the state official ballot. This respondent refused to do upon the ground that the Socialist-Labor organization had no standing as a party; that, if it ever had such right, it had lost it, because it did not poll sufficient votes at the last state election.

The Social Democratic party was, previous to the present year, a political group organized under that appellation subsequent to the Socialist-Labor organization. It had a distinct party existence, with an independent political propaganda, and polled at the last general election more than one per cent. of the entire vote cast in the state. It held a convention in July last, which named Jay E. Nash for governor, and adopted a resolution changing its name to the "Socialist Party." These facts were set forth and certified to respondent with the request that the name of Nash be placed upon the state ballot as a candidate for governor of the newly named Socialist party. Respondent accepted the proposed certifi-

cate, and was about to comply with its request, when restrained by the order of this court, upon the conclusion that Nash had no legal right thus to use the word "Socialist" as a party designation, and that the Socialist-Labor party had a right to a place and party name on the official ballot under a petition of electors.

This conclusion rests upon the application of the party-name-protection act, above referred to, which we here quote in full:

"A political party which has heretofore or shall hereafter adopt a party name shall alone be entitled to the use of such name for the designation of its candidates on the official ballot, and no candidate nor party subsequently formed shall be entitled to use or have printed on the official ballot as a party designation, any part of the name of a previously existing political party. And in no case shall the candidate of any political party be entitled to be designated upon the official ballot as the candidate of more than one political party, and shall be designated upon the official party ballot in accordance with the certificate of nomination first filed with the proper officers." Laws 1901, c. 312.

The purpose of this statute is unambiguous. It was unquestionably enacted to prohibit political parties from interfering with titles previously adopted by other political organizations,—very much in analogy to the security given proprietors of trade-marks, —and to the extent of a proper recognition of practical means to the utility of partisan effort in political affairs must be held valid. Hence, if the claim of petitioner that the Socialist-Labor organization is an existing party is sound, there can be no doubt that his party is entitled to the benefit of the act, and the use by any other party, group, or faction of the word "Socialist" as a party designation is an illegal impairment of established rights. It is insisted, however, by the representatives of the previously so-called "Social Democratic" party that the conceded fact that the Socialist-Labor party had not polled one per cent. of the entire vote of the state at the previous general election restricted the party of petitioner from holding a convention, and his party for that reason ceased to be a distinct political entity, or entitled to the benefits of this statute. This was the view taken by respondent.

The primary law of 1899 (chapter 349, § 1) provides generally for an election to regulate nominations by political parties. It applies

to all subsidiary municipal divisions and the congressional districts of the state, but, as noted above, specifically excepts the nomination of state officers from its effect. Keeping in mind the distinction between the primary election law, which is to recognize and regulate party organization, and the general election law, which is to secure secrecy to the voter in his right to the franchise, it would not reasonably be supposed that the primary law intended to effect or change provisions for the description of political parties on the official ballot in cases where no change had been made in the previous method of their nomination. Certainly such change would not be assumed without being unequivocally expressed, and the only provision of the subsequent primary law where there is any intimation of a statutory definition of political parties is Laws 1899, c. 349, § 2. It is as follows:

"A political party within the meaning of this act is one which shall have cast at least ten per cent. of the total vote cast at the last preceding election for its leading candidate, or shall present to the county auditor a petition asking for the right to have a primary election ticket as hereinafter provided for, such petition to contain at least ten per cent. of the qualified electors of the county in which the privilege is asked: * * * provided, that nothing herein contained shall be construed to prevent the nomination of candidates for such offices by any groups, individuals, or so-called political parties which are not recognized political parties in accordance with this section, by the petition in accordance with chapter four (4) of the General Laws of Minnesota for eighteen hundred and ninety-three (1893), which act shall be herein referred to as the general election law."

Manifestly this section has no reference whatever to nominations of state officers, which are not directly affected thereby; but for other officers a ten per cent. prerequisite of the previous total vote is made necessary for party recognition on the primary ballot. The object of quoting this section is to show that the method of using the petition or certificate of electors as an instrumentality of partisan advancement and to promote political success has not been abandoned by the primary law, but was recognized in it. It appears to be the expressed purpose of the proviso therein to protect petitioners of "so-called political parties which are not recognized political parties in accordance with this section." Thus, in

the subsidiary political divisions of the state, so-called political groups or parties, as previously known, are recognized and relieved from the restriction of any attempt at party definition upon the ten per cent. basis, and, so far as it goes in illustrating legislative purpose, the proviso applies to the Socialist-Labor party, and brings it within its terms, for it is a "so-called political party"; but it did not poll ten per cent. of the entire vote of the state, nor perhaps of any of its political subdivisions, but it could make a nomination for congress or for county officers by petition, or by a certified petition of electors, and thus secure a representative place and party name on the official ballot. From this language we can find no implication that the party designation could be added only when the requisite ten per cent. vote had been previously cast. The reverse is the only sensible view to be adopted; otherwise why term it a "so-called political party"? The requisite number of signatures upon the petition was seemingly regarded as a sufficient test of numerical strength in such cases, and, so far as this section has any bearing upon state officers by the way of inference, it supports the contention of petitioner.

It was found necessary, on the adoption of the Australian ballot system in 1893, to define a convention upon the basis of numerical political strength at the polls (G. S. 1894, § 39); but no such definition has been given to a political party. This manifest disinclination to define a party is significant of hesitation by the legislature to restrict privileges of the most substantial character, and we should be extremely loath to create a new definition of parties by implication whereby the esteemed right of the citizen to the elective franchise might be in any way abridged or impaired.

The legislature not having defined a political party, we must resort to its generally accepted meaning in giving effect to that law. The popular use of that statutory term which we shall adopt is found in the latest edition of Webster's International Dictionary, and is as follows: "A number of persons united in opinion or action, as distinguished from or opposite to the rest of a community or association; especially one of the parts into which a people is divided on questions of public policy." The so-called "Socialist-Labor party" comes within this definition. It consisted

of a substantial number of persons, having an organization, a committee, and continued to propagate its views, which were different from and opposed to the views of its rival in this proceeding upon the claims of both parties; and if it could obtain a certificate of two thousand electors for a place upon the state ballot, it was entitled to such right, and might restrain any subsequent party from the use of the word "Socialist" as a means of party designation thereon. Brown v. Jensen, 86 Minn. 138, 90 N. W. 155.

But a controlling view of this matter lies deeper than the critical interpretation of the language of any statute, for the courts should not interpret any legislative act to authorize an arbitrary power by a political party to exclude the substantial rights of citizens to agitate for the adoption of civic results through partisan efforts and recognized methods. Political agitation is indispensable to the well-being of the government itself. It is necessary to attain progress and the maintenance of our free institutions. Without its benefits our commonwealth would be bereft of efficient vital force, and in danger of the evils of absolutism. It is to secure, rather than impair, the untrammeled right to discuss political questions through the influence of its usual agencies that the recent innovations in our election laws were made. The right to agitate and organize political parties is inherent, and secured by the constitution; but every political organization must of necessity have a beginning, and no construction should be given to a statute which interferes with its institution.

We ought not, therefore, to hold, if we can avoid such a result, that our election laws should be construed to prevent the organization of new parties, the advocacy of new political views, or the adoption of new designations. Neither of the two leading political organizations, which have been identified with our history for nearly fifty years, could have originally secured a party name for its candidates upon such a ballot if required to depend upon its first party recognition at an election and a convention dependent thereon. Both the Democratic and Republican parties came into being after the adoption of the federal constitution, and each, at its inception, to avoid the consequences of methods and principles which were regarded as outworn and effete, adopted a name, by which

they have been ever since known. There was a beginning of each of these organizations, and a time before which a convention of either could have based the right to use its newly adopted party name on a precedent vote at the polls; but either might have been organized and adopted a party name under a petition of electors, if our present laws had then been in force.

The party-name-protection act does not restrict, and we doubt if it could be made restrictive of, the right of the citizen to declare his choice of persons through the exercise of the franchise. It applies specifically in terms to the formal use of party names, not of individual preferences; and, while we have reached the conclusion that the use of the word "Socialist" is an impairment of the rights of the Socialist-Labor party, it is not apparent that such use has been adopted for a fraudulent purpose to deprive another party of material advantages. We are therefore of the opinion that the group or organization which has attempted to select the name "Socialist" is entitled to personal recognition of its candidates upon the ballot. But we cannot choose for it the name "Social Democrat," which it has surrendered. We have, therefore, regarded it as our duty to authorize the placing of the name of its candidate for governor upon the state ballot, leaving the representatives of the party to promote the views he represents in any lawful way they see fit, but without the use of the word "Socialist," which, at present, belongs, under the party name act, to the Socialist-Labor party.

Upon these grounds we authorized the secretary of state to place the name of Jay E. Nash, as a candidate for governor, upon the state ticket, but denied the use by such candidate of the word "Socialist," or any other party designation, and we have further directed the secretary of state to place the name of Thomas Van Lear upon the state ticket, and add to his name the words "Socialist-Labor" as a party designation.