### E. T. WINGET v. MIKE HOLM.[1]

September 23, 1932.

No. 29,264.

[1]Reported in 244 N. W. 331.

*Doherty, Rumble, Bunn & Butler*, for petitioner.

*Henry N. Benson*, Attorney General, *Charles E. Phillips*, Deputy Attorney General, and *William H. Gurnee*, Àssistant Attorney General, for respondent.

*Keyes, Pardee & Solether, Henry Spindler*, and *Robert C. Bell*, amici curiae, filed a brief in behalf of the State Income Tax Committee, Inc.

HOLT, J.

This is an original proceeding in this court instituted by a voter and taxpayer to restrain the respondent, the secretary of state, from doing any of the acts required of him by law towards submitting to the voters at the coming general election the amendment to the constitution proposed by L. 1931, p. 617, c. 420, on the ground that two alterations or amendments are thereby proposed in contravention of art. 14, § 1, of the constitution.

The respondent moves to discharge the order to show cause on three grounds, viz. (a) That this court has no jurisdiction of the subject matter of the controversy; (b) that the petition presents no justiciable question; and (c) that the facts stated in the petition and affidavit do not entitle the granting of the relief prayed.

In the brief respondent asserts, first, that this court is without jurisdiction under G. S. 1923 (1 Mason, 1927) § 347; and, secondly, that courts have not jurisdiction of the subject matter. Section 347 reads:

"Whenever it shall appear by affidavit presented to any judge of the supreme court or district court that an error or omission has occurred in the printing of the name or description of any candidate on official ballots, or that any other error has been committed in preparing or printing the ballots, or that the president or secretary of any convention has failed to properly make or file any certificate of nomination, or that the canvassing board of any primary election has failed to make and certify any nomination, or that the name of any person has been wrongfully placed upon the ballots as a candidate, such judge shall immediately order the officer or person charged with the error or neglect to forthwith correct the same, or perform his duty, or show cause why such error should not be corrected or such duty performed."

This is substantially the same statute as G. S. 1894, § 48, and G. S. 1913, § 357, providing for a summary correction of ballots to be used at elections; and this court entertained original jurisdiction thereunder in Higgins v. Berg, 74 Minn. 11, 76 N. W. 788, 42 L. R. A. 245; Davidson v. Hanson, 87 Minn. 211, 91 N. W. 1124, 92 N. W. 93; State ex rel. Day v. Hanson, 93 Minn. 178, 100 N. W. 1124, 102 N. W. 209; Fish v. Erickson, 126 Minn. 525, 147 N. W. 426; Goodspeed v. Schmahl, 127 Minn. 521, 149 N. W. 1069. In the case last cited the secretary of state was directed to correct the ballots respecting the submission of a proposed constitutional amendment. There can be no essential difference between submitting to the voters a candidate who has no legal right to appear on the ballot and submitting a proposed amendment to the constitution in a form therein prohibited. Other cases are State ex rel. Abel v. Berg, 132 Minn. 426, 157 N. W. 652; State ex rel. Fischer v. Berg, 133 Minn. 65, 157 N. W. 907.

The second point made by respondent is that the court has not jurisdiction of the subject matter. It must be conceded settled by

McConaughy v. Secretary of State, 106 Minn. 392, 119 N. W. 408, that courts have jurisdiction to determine whether an amendment to the constitution proposed by the legislature and submitted to the electors was proposed, submitted, and ratified conformably to the mandate of the constitution so as to become a part thereof. But respondent claims that this proceeding is premature; that the adoption of a constitutional amendment is the composite act of the legislature and the electors and that at no point before the final act of both may the court interfere; and that this also implies that the court cannot coerce an official who is charged with some ministerial duty in regard to the preparation, printing, and distribution of the ballots. The courts appear divided on the proposition. The following sustain respondent: People ex rel. O'Reilly v. Mills, 30 Colo. 262, 70 P. 322; Threadgill v. Cross, 26 Okl. 403, 109 P. 558, 138 A. S. R. 964; State ex rel. Cranmer v. Thorson, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582. As supporting petitioner we cite Livermore v. Waite, 102 Cal. 113, 36 P. 424, 25 L. R. A. 312; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916; Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915C, 200; Mathews v. Turner, 212 Iowa, 424, 236 N. W. 412; State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281.

Another case indicating that this court has the power to coerce an official to perform a ministerial duty by means of the prerogative writs of mandamus and injunction, where matters of great public interest are involved, is State ex rel. Bolens v. Frear, 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, Ann. Cas. 1913A, 1147. There seems to be no good reason why the court should not interpose to save the trouble and expense of submitting a proposed constitutional amendment to a vote, if it be not proposed in the form demanded by the constitution, so that, though approved by the electors, the courts would be compelled to declare it no part of the constitution. As said in McConaughy v. Secretary of State, 106 Minn. 392, 401, 119 N. W. 408, 411: "The courts have always uniformly exercised the authority to determine the validity of the proposal, submission, or ratification of constitu-

tional amendments." And we think the trend of our decisions above cited is in line with those cited from California, Florida, Indiana, Iowa, and North Dakota.

We must therefore consider the petition on the merits, that is: Does the proposed amendment, L. 1931, p. 617, c. 420, contain two alterations or amendments? If it does, the last sentence of art. 14, § 1, of the constitution forbids its submission. It reads:

"If two or more alterations or amendments shall be submitted at the same time it shall be so regulated that the voters shall vote for or against each separately."

Where similar language exists in state constitutions courts have declared the requirement mandatory. People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 102 A. S. R. 34; Hammond v. Clark, 136 Ga. 313, 71 S. E. 479, 38 L.R.A. (N.S.) 77; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916; McBee v. Brady, 15 Idaho, 761, 100 P. 97; Mathews v. Turner, 212 Iowa, 424, 236 N. W. 412; State ex rel. Morris v. Secretary of State, 43 La. Ann. 590, 9 So. 776; State ex rel. Collins v. Jones, 106 Miss. 522, 64 So. 241; State ex rel. City of Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 5 A. L. R. 731; State ex rel. Greenlund v. Fulton, 99 Ohio St. 168, 124 N. E. 172; Lozier v. Alexander Drug Co. 23 Okl. 1, 99 P. 808; Martin v. County of Marion, 91 S. C. 447, 74 S. E. 983; State ex rel. Adams v. Herried, 10 S. D. 109, 72 N. W. 93; Gottstein v. Lister, 88 Wash. 462, 153 P. 595, Ann. Cas. 1917D, 1008; State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785.

The title to L. 1931, p. 617, c. 420, is:

"An act proposing an amendment to section 1 of article 9 of the constitution of the state of Minnesota, relating to taxation."

The first section of the chapter provides that the proposed amendment shall take the place of art. 9, § 1, relating to taxation, so that if approved by the people § 1 of said article shall read thus:

"Section 1. The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public

purposes, but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, and there may be exempted from taxation personal property not exceeding in value $200, for each household, individual or head of a family, as the legislature may determine. *The legislature may enact any law required to make the taxation of national banking associations conform to the laws of the United States. Taxes may be imposed upon incomes and on franchises and privileges measured by income, including income, franchises and privileges of railroad companies, which may be classified, and which taxes may be graduated and progressive, and the legislature may prescribe reasonable exemptions, and such taxes may be in lieu, in whole or in part, of taxes on any class or classes of real or personal property as the legislature may determine. It shall not be necessary to submit to a vote of the people any law imposing a tax upon the income, franchises or privileges of railroad companies. Any and all provisions of the constitution of this State inconsistent herewith are hereby repealed.* Provided, that the legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation, and provided further, that nothing herein contained shall be construed to affect, modify or repeal any existing law providing for the taxation of the gross earnings of railroads."

The portion in italics is new; the rest·is § 1 as it now stands. Petitioner insists that the first sentence of the portion in italics is a separate and unrelated alteration or amendment to what follows in italics. If that be so, the above quoted provision from art. 14, § 1, forbids its submission as one amendment. Frankly, petitioner admits that although what follows the first sentence in italics may be separated into several propositions, yet all are germane or incident to income taxation and hence are comprehended in only one amendment. Courts have announced certain rules or principles by

which to determine whether or not a proposed amendment contains more than one alteration or amendment. No great divergence is found in the language in which these rules are stated. The difficulty comes in the application to the concrete case. In State ex rel. Hudd v. Timme, 54 Wis. 318, 336, 11 N. W. 785, 791, it was said:

"We think amendments to the constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other."

In Jones v. McClaughry, 169 Iowa, 281, 300, 151 N. W. 210, 217, it was said:

"While not more than a single subject is to be covered by an amendment, some latitude necessarily must be indulged in ascertaining the real subject touched and the purpose to be accomplished; and within proper limitations, the legislature may exercise discretion in defining the subject matter to be included in a proposed amendment. This is necessarily involved in the power of proposing amendments to the Constitution conferred on that body."

The court, in People ex rel. Elder v. Sours, 31 Colo. 369, 405, 74 P. 167, 178, 102 A. S. R. 34, held:

"That an amendment may embrace more than one subject. That if an amendment embraces more than one subject, said subjects need not be separately submitted if they are germane to the general subject of the amendment, and if they are so connected with or dependent upon the general subject that it might not be desirable that one be adopted and not the other."

State ex rel. City of Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 850, 5 A. L. R. 731, dealt with an amendment to the taxing provisions of the constitution of North Dakota which affected two existing sections of the constitution of different import, and the

court said in answer to the argument that two subjects were embraced therein [40 N. D. 335]:

"Perhaps this might be true, but amendments to the Constitution are not to be analyzed until each idea that enters into a composite thought or purpose is made to stand out dissevered from every other idea with which it is related. * * * This is not the test of the singleness of an amendment. The controlling consideration is the singleness of the purpose and the relationship to the general subject."

The court [40 N. D. 336] then calls attention to the fact of the so-called wide open tax amendment in this state of 1906—art. 9, § 1, as it now stands—which was adopted as a single amendment, taking the place of five sections of the constitution as it then existed, each relating to a different subject of taxation; yet its validity has not been assailed on the ground here urged. The rule is thus stated in State ex rel. Hay v. Alderson, 49 Mont. 387, 404, 142 P. 210, 213, Ann. Cas. 1916B, 39:

"If, in the light of common sense, the propositions have to do with different subjects, if they are so essentially unrelated that their association is artificial, they are not one; but if they may be logically viewed as parts or aspects of a single plan, then the constitutional requirement is met in their submission as one amendment."

It is not necessary to consider whether or not as art. 9, § 1, now stands any further amendment to the constitution is necessary in order to tax incomes or national banks, for it must be conceded that the constitution may be amended even though the legislature had adequate authority to enact desired legislation on the subject without such amendment. Since the legislature is invested with the power to propose amendments, their scope and form must be left to it within reasonable limits. Any amendment of art. 9, § 1, necessarily relates to the subject of taxation. And it fairly may be asserted that the object and purpose of L. 1931, p. 617, c. 420—the proposed amendment—is to widen the field of taxation and as in-

cidental thereto make the procedure more elastic than at present. Any new source of taxation affects existing sources, at least as to the amount required to be raised. Therefore there is nothing incongruous in connecting authority to tax incomes with authority to tax national banks in conformity to federal law. In fact, as to national banks, there is no obstacle now, except to provide a method which does not conflict with federal statutes and decisions. The petitioner forcibly contends that taxing incomes is a new revenue measure in this state, not related or germane to the methods of taxation hitherto in vogue or to the taxation of national banking associations. And it may be conceded that in a measure this contention is sustained by such cases as McBee v. Brady, 15 Idaho, 761, 100 P. 97, and Mathews v. Turner, 212 Iowa, 424, 236 N. W. 412. However, it should be noted that three judges dissented in the case last cited, being of the opinion that the proposed amendment did not contain more than one amendment.

From the decisions above cited it appears that courts are slow to conclude that the legislature has proposed a constitutional amendment containing two or more alterations or amendments in violation of such a provision as we have in the last sentence of art. 14, § 1. Courts defer somewhat to the judgment of the legislature upon that proposition. It is not enough that a proposed amendment contains several propositions which could have been submitted in separate amendments. But the changes proposed must be independent and unrelated so as not to fit in with the one general aim or purpose of the amendment framed. It is true that taxing incomes is entirely distinct from taxing national banks; but all state and local taxation is employed for the single purpose of carrying on the functions and activities of state and municipal government. Art. 9, § 1, is the main constitutional limitation upon the otherwise unlimited power of taxation vested in the legislature —except art. 4, § 32a (relating to repeal of gross earnings tax statutes applicable to railways); art. 9, § 1A (occupation tax); art. 9, § 5 (gasolene tax); and art. 16, § 3 (motor vehicle tax). Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, 47 L. R. A. 525, 79 A. S. R. 446.

When art. 9, § 1, was adopted in 1906, not only was § 1 as it previously read altered as to several separate provisions, but a separate amendment authorizing the inheritance or succession tax was dropped out, and §§ 2, 3, 4, and 17 of the same article were repealed.

In all subsequent litigation regarding taxation no question has been raised that the amendment of 1906—the now existing art. 9, § 1—contained two or more separate amendments or alterations. The people have apparently acquiesced in its being a part of the constitution, taking the place of several distinct propositions therein regarding the subject of taxation. It certainly is incumbent on this court to avoid rendering a decision herein which would invite an attack upon a part of the constitution that has stood unquestioned for over a quarter of a century, unless compelled by clear and convincing reasons. As the object and purpose of the amendment of 1906 was to remove the limitations in regard to taxation which bound the legislature by the provisions of art. 9 as it stood prior thereto, so we think it fairly may be said that the object and purpose of the amendment proposed by L. 1931, p. 617, c. 420, is to widen the field for taxation, and as a mere incident thereto to make more elastic the method of procedure so as to tax national banking associations conformably to federal statutes. So viewed, we think the proposed amendment does not violate the last proviso in art. 14, § 1.

Logically the initiative and referendum are separate and independent propositions and different in purpose. But the courts, in the several decisions above cited where that question arose, uniformly hold against the contentions that the two propositions could not be submitted as one proposed amendment to a state constitution having a provision of the same import as the one we have.

The order to show cause is discharged and the proceeding dismissed.

STONE, J. (concurring specially).

I agree in the first two propositions dealt with by Mr. Justice Holt. In deference mainly to the opinion of my associates, I concur

in the result also. But I do feel that we should make it plain that a multifarious proposition to amend the constitution will not be sustained simply because, although there are several distinct "alterations or amendments," they will yet be held a unit solely because all, if adopted, will operate within one of the three great fields of government power—those of taxation, eminent domain,. or police.

LORING, J. (concurring).
I agree with Mr. Justice Stone.

