PETER FUGINA v. JOSEPH DONOVAN.

104 N. W. (2d) 911.

September 9, 1960—No. 38,222.

*Helgesen, Kane, Peterson & Engberg* and *Wangensteen & Moriarity,* for petitioner.

*Walter F. Mondale,* Attorney General, and *Harold J. Soderberg,* Assistant Attorney General, for respondent.

LOEVINGER, JUSTICE.

This is an original proceeding in this court by a taxpayer to prevent the secretary of state from submitting to the voters a constitutional amendment proposed by Ex. Sess. L. 1959, c. 89, on the ground it is multifarious in contravention of Minn. Const. art. 14, § 1.

Chapter 89 proposes to amend Minn. Const. art. 4, §§ 1 and 9.[1]

The amendment to § 1 would have the effect of permitting the legislature to extend the term of any session for not more than 30 days beyond 90 legislative days. The amendment to § 9 would have the effect of permitting legislators to serve as notaries and to seek election to other offices. The present prohibition in § 9 against a legislator holding any office which has been created or the emoluments of which have been increased during his legislative service until one year after the expiration of his term would be repealed.

Minn. Const. art. 14, § 1, provides that "If two or more alterations or amendments" to the constitution are submitted at one time, votes shall be permitted for or against each separately. It is contended that c. 89 provides for the submission of two constitutional amend-

---

[1]The text of Ex. Sess. L. 1959, c. 89, is set forth as an appendix to this opinion.

ments in a single proposal. If so the proposal violates art. 14, § 1, and the submission should be prohibited by the court in this proceeding.[2] The problem presented involves solely questions of law and is appropriate for determination at this time. Indeed, the case must be decided quickly if it is to affect the ballot at the next election.

It should be noted that c. 89 was approved July 2, 1959, but that the present action was not filed until August 24, 1960, when preparations were being made for the election. If purely private interests were involved, we would hold this delay to constitute laches, barring plaintiff from relief. However, a constitutional principle is invoked here in the public interest. The doctrine of laches is not properly applicable in this situation.[3]

A number of states have constitutional requirements that where more than one proposed amendment is submitted, each must be presented so it may be voted upon separately.[4] The first case considering such a provision is State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785. It was there said that such a provision requires the separate submission of proposed amendments which have different objects and distinct purposes not dependent upon or connected with each other. There have been numerous later cases virtually all of which have repeated substantially the same language.[5]

However, while the cases use substantially the same language, it seems impossible to reconcile the results reached. In Winget v. Holm, 187 Minn. 78, 244 N. W. 331, this court held that a proposed constitutional amendment relating to the taxation of national banks and also authorizing income taxes was not objectionable as multifarious. On the other hand, Kerby v. Luhrs, 44 Ariz. 208, 222, 36 P. (2d) 549, 555, 94 A. L. R. 1502, 1510, held that a proposed amendment relating to the taxation of copper mines, the taxation of public utilities,

---

[2]Winget v. Holm, 187 Minn. 78, 244 N. W. 331.

[3]Cf. Pugnier v. Ramharter, 275 Wis. 70, 81 N. W. (2d) 38, 71 A. L. R. (2d) 522, with Annotation at 529.

[4]Dodd, The Revision and Amendment of State Constitutions (1910) p. 178, et seq.

[5]Winget v. Holm, 187 Minn. 78, 244 N. W. 331; Kerby v. Luhrs, 44 Ariz. 208, 36 P. (2d) 549, 94 A. L. R. 1502; Annotation, 94 A. L. R. 1510.

and establishing a tax commission is "a most glaring violation" of a similar constitutional provision.

There seem to be two basically different attitudes exemplified by these decisions. The latter case takes a narrow and strict view of those propositions which may be joined in a single proposed amendment. In effect this requires that propositions which may be submitted separately without being incomplete shall be submitted separately. The broader and more liberal view, adopted by this court in Winget v. Holm, *supra,* is that propositions that might be submitted separately may be submitted in a single proposal if they are rationally related to a single purpose, plan, or subject.

These differing attitudes appear to arise from differences in emphasis of the objectives sought. The constitutional mandate that multifarious amendments shall be submitted separately has two great objectives. The first is to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable. The second is to afford the voters freedom of choice and prevent "logrolling," or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts.[6]

Examination of the two parts of the proposal involved here shows clearly that they might easily and properly have been presented as separate amendments to the constitution. We are inclined to believe it would have been preferable to present them as separate proposals. However, this belief cannot be made the basis for a ruling that the propositions must be separately submitted.

Both parts of the proposed amendment have to do with a single article of the constitution and with the legislative department. While not necessarily related, they may be rationally related since both have to do with the burdens of being a legislator. It may have been thought that if legislators might be required to serve an additional 30 days,

---

[6]Kerby v. Luhrs, 44 Ariz. 208, 36 P. (2d) 549, 94 A. L. R. 1502, with Annotation at 1510.

which is an additional burden for a part-time legislator, there should be some relaxation of the restrictions imposed upon legislators seeking other offices in order that the office of legislator should not become so unattractive that an undue number be discouraged from seeking it.

In determining whether there is a rational relationship in purpose, plan, or subject of two or more propositions, we can, and indeed must, weigh the relative importance of the propositions. Most sections of the constitution contain a number of provisions, some of greater and some of less importance. It would obviously be unreasonable, even by the most strict and narrow view, to require that every alteration or amendment of any phrase, clause, or provision of the constitution be submitted for a popular vote as a separate proposition. Whether particular proposals can be combined, therefore, necessarily requires a judgment both as to the relationship between them and as to their relative importance.

For example, permitting legislators to serve as notaries, as is now proposed, hardly involves any significant change in our structure of government. On the other hand, it may be a great convenience to many members of the legislature. Accordingly, it can reasonably be included as a subordinate provision in an amendment which may require 30 days' additional service at each session. This does not necessarily imply that it would be proper to present as a single proposed amendment a provision for extending the term of the legislature and a provision establishing the basis of representation. We intimate no opinion as to whether or not these propositions might properly be joined, but use this merely as an illustration of propositions whose significance might require separate submission to the voters even though the present proposal is held proper.

Giving due weight to all of these considerations, there is serious doubt as to whether or not the apparently unrelated propositions of c. 89 may properly be proposed as a single amendment. However, we must also bear in mind that the courts owe great deference to the judgment of the legislature as to matters properly within its purview. It does not appear that permitting the propositions of c. 89 to be presented as a single proposal will frustrate the objectives of art. 14, § 1. The proposal is simple and clear enough to be understandable

to an ordinary citizen and is not misleading. While the logical relationship between the propositions involved is somewhat remote, and perhaps as remote as is permissible, yet it exists; and the relative importance of the propositions makes it not unreasonable that they be joined. In these circumstances, the controlling consideration is the deference due the legislative judgment that this is a proper proposal to amend the constitution. Accordingly, despite the doubts expressed herein, we hold that the specific proposal to amend the constitution made by c. 89 does not contravene Minn. Const. art. 14, § 1.

The order to show cause is discharged and the proceeding dismissed.

KNUTSON, JUSTICE (concurring specially).

In deference to the opinions of a majority of my colleagues I reluctantly concur in the result. I can see no rational relationship between the two sections that would be amended by the adoption of this proposal. Obviously the people should have a right to express their opinions on each separately. I fear that what we are doing is to nullify Minn. Const. art. 14, § 1. However, amendments of whole articles of our constitution[7] have gone unchallenged in the past and rather than jeopardize what the people have heretofore approved it seems the lesser of two evils to uphold what is here proposed.

MURPHY, JUSTICE (dissenting).

It is my view that Winget v. Holm, 187 Minn. 78, 244 N. W. 331, and the authorities discussed in it require a result contrary to the one reached by the majority. In that case we held that the provisions in a proposed amendment for the taxation of national banking institutions and the taxation of incomes are two related and dependent propositions germane to the purpose of widening the field of taxation. The proposal before us, however, may be clearly distinguished. It presents to the voter two unrelated subjects: (1) Extending the term of any session of the legislature for an additional 30 days; and (2) permitting legislators to serve as notaries public and seek election to other offices. These objectives are not germane to a common purpose. The proposal embraces two subjects having distinct and separate purposes.

---

[7]See, for instance, amendment of art. 6, proposed by L. 1955, c. 881, and adopted on November 6, 1956, which deals with the judiciary.

While the object of both changes may be desirable, the fact remains that the voter is denied the right which Minn. Const. art. 14, § 1, gives him to vote on each separately. The wisdom and purpose of this section has not been impaired by time or conditions. It is as conducive to good government today as when it was originally adopted. As late as 1948 the voters of the state rejected a proposal to amend it which would have provided "two or more alterations or amendments to the Constitution may be submitted at one time without requiring that the voters shall vote for or against each separately." L. 1947, c. 640, § 2. It is the design of art. 14, § 1, that the voter should not be placed in a position where to secure an amendment which he feels is necessary or expedient he will be required to accept one which he does not want. Nor should a desirable change in our constitution fail because a voter will not accept it at the price of voting for one he deems unwise. If the legislature desires to amend the constitution piecemeal rather than attempt the more cumbersome method of complete revision the requirement of stating the subject of the alteration or amendment separately should be strictly followed.

Nor do I agree with the view of the majority that in determining the rational relationship of two or more propositions the court may weigh their relative importance. The procedure and requirements established for the amendment of the fundamental law are mandatory and must be strictly followed in order to effect a valid amendment. It is not for the court to consider the wisdom or expediency of changes in the fundamental law. The question for the court to decide is whether the legislature in proposing the amendment has observed constitutional requirements. For the foregoing reasons, I respectfully dissent.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

APPENDIX

"EXTRA SESSION
CHAPTER 89—H. F. No. 11
[Not Coded]

"*An act proposing an amendment to Article IV, Sections 1 and 9 of the Constitution of the State of Minnesota, relating to legislative sessions and qualifications of legislators for other elective offices.* "Be it enacted by the Legislature of the State of Minnesota:

"Section 1. An amendment to Article IV, Section 1, of the Constitution of the state is hereby proposed to the people of the state for their approval or rejection, which section when amended shall read as follows:

"Section 1. The legislature shall consist of the Senate and House of Representatives, which shall meet biennially at the seat of government of the state, at such time as shall be prescribed by law, but no session shall exceed the term of ninety (90) legislative days *unless the session is extended by law enacted at the regular session of the legislature immediately preceding the session for which the extension is made and then only for a maximum of thirty (30) additional days. No new bills shall be introduced in either branch of the legislature after the seventieth (70th) legislative day except as authorized by joint rules of the Senate and House of Representatives.*

"Sec. 2. An amendment to Article IV, Section 9, of the Constitution of the state is hereby proposed to the people of the state for their approval or rejection, which section when amended shall read as follows:

"Sec. 9. No senator or representative shall, during the *term* for which he is elected, hold any office under the authority of the United States or the State of Minnesota, except that of *notary public, but a senator or representative may be elected to any office for which he is otherwise qualified and when elected, his term as senator or representative shall terminate upon his qualifying for the office to which he was elected and a vacancy in his office in the legislature shall thereupon occur.*

"Sec. 3. This proposed amendment shall be submitted to the people

of the state for their approval or rejection at the general election for the year 1960 as Constitutional Amendment No. 1 in the manner provided by law for the submission of amendments to the constitution. The votes thereon shall be counted, canvassed, and the results proclaimed as provided by law. The ballots used at the election shall have printed thereon the following:

" 'Shall Article IV, Sections 1 and 9 of the Constitution be amended to provide for extending by law the regular legislative session for not exceeding thirty days, for restricting the time during which bills may be introduced; and for setting qualifications for legislators to be candidates for other elective offices?

Yes ........

No ........'

"Approved July 2, 1959."