## IVER BOGEN AND OTHERS v. JOHN SHEEDY AND OTHERS.

229 N. W. 2d 19.

May 2, 1975—No. 45207.

*Friedman & Friedman, Newton S. Friedman,* and *Larry M. Nord,* for appellants.

*William P. Dinan,* City Attorney, and *Robert E. Asleson,* Assistant City Attorney, for respondents.

Heard before Sheran, C. J., and Rogosheske and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from a decision of the District Court of St. Louis County rendered in a declaratory judgment action brought to interpret provisions of the Duluth City Charter. Plaintiffs appeal the judgment entered upon a determination that a single referendum petition brought against two Duluth city ordinances was null and void. We reverse.

On October 29, 1973, the City Council of the City of Duluth gave final reading to two ordinances, namely Nos. 8019 and 8020. Ordinance No. 8019 is entitled "An ordinance amending Section 34-12 of the City Code relating to the sale and distribution of obscene materials" and deals with the sale and distribution of obscene materials. Ordinance No. 8020 is entitled "An ordinance adding a new Section 34-12.1 to the City Code to prohibit the use of sexual material, nudity, and obscene words in public advertising displays" and deals with display and advertising of obscene materials. On November 30, 1973, plaintiffs, and other citizens and qualified electors of the city of Duluth, submitted a single petition to the city clerk requesting that both ordinances be either repealed by the city council, or, if not repealed, submitted to a vote of the electors of the city. This petition had been circulated by plaintiffs and others. The city clerk certified that said petition was duly filed and had the requisite number of signatures of the electors.

The pertinent provisions of the city charter (Duluth City Charter, § 52) specify that 10 percent of the voters in the last

election have to sign a petition and that the petition must be submitted within a specific time limit in order to require a referendum vote. Within the required time limit the petition was presented to the city clerk. The city clerk certified that 1,934 signatures had been duly authenticated on the petition and that the 10 percent required was 1,772. The petition was then referred to the city council for action.

Thereafter, the council took no further action on the referendum petition on the grounds that a single referendum petition could not include more than one ordinance and conform to § 52 of the charter. The ordinances are being enforced; at least three prosecutions have occurred for violations of these ordinances. The plaintiffs in this action, however, have no connection with the defendants in these prosecutions.

This declaratory judgment action was brought to compel the city to repeal Ordinances Nos. 8019 and 8020, or submit them to a referendum pursuant to § 52 of the Duluth City Charter. Defendants are the City Council of the City of Duluth and certain city officials. Plaintiffs are citizens and taxpayers of the city of Duluth and signers of the petition.

A hearing was held in the district court on a motion by plaintiffs for a temporary restraining order prohibiting the enforcement of the ordinances in question. This motion was denied by the court. It was then agreed by the attorneys for plaintiffs and the city attorney that the plaintiffs would proceed with the principal action and the parties would submit the issue to the court on written briefs for a final determination.

The district court determined that the petition was not sufficient and did not comply with the provisions of § 52 of the charter because two petitions were required, and, therefore, that the ordinances were in full force and effect. This appeal followed.

Did the trial court err in holding that under applicable city charter provisions a single referendum petition cannot encompass the two ordinances at issue?

The trial court articulated the following rationale in a memorandum in support of its decision:

"Plaintiff further argues that * * * it is not improper to submit one petition encompassing two ordinances since both ordinances deal with the same general subject and are substantially related or interrelated as to be considered as one. To this position the Court again disagrees. One of the ordinances under consideration primarily deals with the possession or sale of obscene materials and was a very keenly debated and contested subject which was passed by the City Council on a 5-to-4 vote. The other ordinance under consideration was an ordinance primarily concerned with the open display or advertising of nudity or obscene materials which was passed by the City Council on a vote of 8 to 1. It is understandable that many people may take the position and stand on the premise that an adult individual should be able to possess or read any type of literature whether it is obscene or not, but would not take the same stand if such materials were open for public display to juveniles or unwilling adult viewers. *Thus, this Court takes the position although both ordinances concern themselves with the subject of obscenity, it does not take the position that both ordinances are so substantially related or interrelated as to be considered as one.*

\* \* \* \* \*

"This Court does not believe that the City Council is in any way attempting to thwart the efforts of those who sponsored the referendum petition. They are merely stating, in substance, that if such individuals are attempting to exercise their referendum rights under Section 52 of the City ordinance, they must do so correctly and properly. This Court takes the further position that if the advocates of the referendum petition are sincere in their efforts, there is no reason that the Court can see why they could not proceed to pass their own ordinance by initiative under Section 51 of the Duluth City Charter." (Italics supplied.)

Plaintiffs take strong exception to the trial court's conclusion expressed in the above italicized language. In their brief, they present the following argument:

"The petition filed required a referendum on the two ordinances specified. Both of these ordinances are in the same section of the City Code, one following the other; they are numbered as part of the same subject; with one being subordinate to the other, i.e., 34-12 and 34-12.1; both, as the Court below recognized, deal with the same subject matter; both were considered by the City Council at the same time; both were publicly debated together; both were given a first reading at the same time and a final reading at the same time; both were adopted at the same time; both were placed on a single petition; and both were requested by electors of the City to be placed on the ballot for a vote. The continued connection of one ordinance with the other, even in the numbering in the ordinance register, clearly shows that the City Council, as well as the public, were fully aware that these two ordinances were part and parcel of a single plan for the regulation of obscene materials. The public was not and could not have been misled by the form of the petition."

In Aad Temple Building Assn. v. City of Duluth, 135 Minn. 221, 160 N. W. 682 (1916), petitioners contended that their referendum petition (brought under the Duluth City Charter, § 52) was unlawfully rejected by the city. Although the alleged grounds for rejection were unrelated to the grounds for rejection advanced in the instant case, this court set forth the following considerations which are relevant to our deliberations in the present case:

"It necessarily must be presumed that the members of the city council, who are the representatives of the people and to whom is confided the lawmaking authority, have acted with deliberation, honestly and in good faith in the performance of their duty in passing an ordinance for the government or welfare or benefit of the city, and that the passing of an ordinance by them is a

valid exercise of the power delegated to them. The right to suspend and possibly to revoke, as given by the referendum, (section 52), is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction. It must be confined within the reasonable limits fixed by the charter. The charter prescribes what the petition for referendum shall contain, how it shall be signed and by whom it shall be verified. These provisions are intended to guard the integrity both of the proceeding and of the petition. Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided by law against its irregular or fraudulent exercise should be carefully maintained." 135 Minn. 226, 160 N. W. 684.[1]

In a strict sense, the issue herein presented is one of first impression in this jurisdiction. However, several prior decisions of this court are applicable by analogy and thus may provide some guidance to the instant inquiry.

In Winget v. Holm, 187 Minn. 78, 244 N. W. 331 (1932), plaintiff, a voter and taxpayer, attempted to employ then Minn. Const. art. 14, § 1,[2] to prevent the submission of a proposed constitutional amendment for approval (or rejection) by the electorate. That proposed amendment, to Minn. Const. art. 9, § 1, related to the taxation of national banks and also authorized the imposition of a state income tax. This court held that the proposed amendment was not multifarious. In support of its decision, this court adopted the following language from State ex rel. Hudd v. Timme, 54 Wis. 318, 336, 11 N. W. 785, 791 (1882):

---

[1] The above quoted language was quoted with approval by this court in Anderson v. City of Duluth, 279 Minn. 50, 53, 155 N. W. 2d 281, 283 (1967).

[2] Minn. Const. art. 14, § 1, then provided in part: "If two or more alterations or amendments shall be submitted at the same time, it shall be so regulated that the voters shall vote for or against each separately." Similar provisions are now found in Minn. Const. art. 9, § 1.

"We think amendments to the constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other." 187 Minn. 84, 244 N. W. 333.

The court also examined other foreign decisions and concluded as follows:

"From the decisions above cited it appears that courts are slow to conclude that the legislature has proposed a constitutional amendment containing two or more alterations or amendments in violation of such a provision as we have in the last sentence of art. 14, § 1. Courts defer somewhat to the judgment of the legislature upon that proposition. It is not enough that a proposed amendment contains several propositions which could have been submitted in separate amendments. But the changes proposed must be independent and unrelated so as not to fit in with the one general aim or purpose of the amendment framed. It is true that taxing incomes is entirely distinct from taxing national banks; but all state and local taxation is employed for the single purpose of carrying on the functions and activities of state and municipal government." 187 Minn. 86, 244 N. W. 334.

In Fugina v. Donovan, 259 Minn. 35, 104 N. W. 2d 911 (1960), the court followed the precedent established in Winget v. Holm, *supra*. Once again the issue before the court was whether or not a proposed constitutional amendment was violative of Minn. Const. art. 14, § 1.[3] The proposed amendment at issue sought to empower the legislature to extend its term for not more than 30 days beyond the 90 legislative day session. Additionally, that amendment proposed to allow legislators to serve as notaries and to seek election for other offices. In holding that the aforesaid

---

[3] See footnote 2, *supra*.

amendment was not violative of art. 14, § 1,[4] this court noted that there are two basically different attitudes concerning what does or does not constitute a multifarious proposed amendment. The court allowed a proposal to encompass propositions which are "rationally related to a single purpose, plan or subject." 259 Minn. 38, 104 N. W. 2d 914.

The court then articulated the two great objectives of the "constitutional mandate that multifarious amendments shall be submitted separately" (259 Minn. 38, 104 N. W. 2d 914):

(1)   To prevent deceit of the public by the presentation of misleading or not readily understandable propositions.

(2)   To allow voters freedom of choice by the prevention of "logrolling" by "combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts."

The court set forth one further consideration, i.e., that of weighing "the relative importance of the propositions,"[5] and noted that the courts owe "great deference" to legislative judgment in that regard. 259 Minn. 39, 104 N. W. 2d 914. It is our opinion that, at the very least, equal deference should be given to the wishes of a large number of voters who are willing to affix

---

[4] The court stated as follows: "Both parts of the proposed amendment have to do with a single article of the constitution and with the legislative department. While not necessarily related, they may be rationally related since both have to do with the burdens of being a legislator." Fugina v. Donovan, 259 Minn. 35, 38, 104 N. W. 2d 911, 914 (1960).

[5] The court noted: "* * * Most sections of the constitution contain a number of provisions, some of greater and some of less importance. It would obviously be unreasonable, even by the most strict and narrow view, to require that every alteration or amendment of any phrase, clause, or provision of the constitution be submitted for a popular vote as a separate proposition. Whether particular proposals can be combined, therefore, necessarily requires a judgment both as to the relationship between them and as to their relative importance." 259 Minn. 39, 104 N. W. 2d 914.

their signatures to a petition in order to allow all voters of a municipality to express their views on a very controversial matter.

The most recent challenge to a proposed constitutional amendment on grounds that it was multifarious was presented to this court in Opatz v. City of St. Cloud, 293 Minn. 379, 196 N. W. 2d 298 (1972). In that case plaintiff took exception to a proposal which sought to lower the voting age from 21 to 19, and also to *maintain* the existing minimum age requirement of 21 in order to hold public office.

"From a more practical point of view," the court found the challenged proposal was intended to accomplish only a single purpose—change the voting age. Against an allegation that the proposed amendment was an example of logrolling, the court stated:

"* * * While it might be true that some people might have voted to accept one proposition and to reject the other, had there been separate proposed amendments regarding the voting age and the retention of the age at which office could be held, the language of the amendment was clear enough that it can hardly be said that any voter was misled by the proposal." 293 Minn. 382, 196 N. W. 2d 300.

Although both parties have cited cases from other jurisdictions which have dealt specifically with challenges to referendum petitions on grounds that the petitions were multifarious, it is apparent that, in the final analysis, those cases are of little assistance because each case of this nature must turn on its own particular facts.

The main objection to the petition at issue in the instant case was that it constituted logrolling. In short, the trial court, as shown in the above quotation from his memorandum, found a recognizable probability that some voters would object to one provision and not the other. It is our opinion that the trial court's conclusion was incorrect. It appears obvious from the record that the two ordinances were not only on the same subject matter but were considered together, debated together, and were passed by

the council on the same evening. Therefore, there is little chance that the public was either deceived or that logrolling in securing of the petition took place.

Moreover, public officials rule with the consent of the governed. What possible harm could result in requiring a referendum on the subject matter of this litigation? If the voters vote down the ordinances, it will be the majority of the people themselves and not merely their elected representatives making that decision. If the voters affirm the council, what greater assurance and encouragement could be given officials required by law to enforce such an ordinance than the fact that such a law has been passed by not only a majority of the legislative body of that city but of the people as well?

Courts can take notice of how difficult it is to prepare and to circulate any petition. Frequently such petitions are prepared by laymen, not skilled in the technical aspects of the law. Courts should exercise extreme caution in ruling out, on mere technicalities, such documents which are the result of democracy working at the grassroots level.

In reversing the trial court, we do not hold that the city council may not place each ordinance on the ballot to be voted upon separately, as they were in the city council. This opinion is limited to the petition for referendum only and deals with the facts of this particular case.

Reversed and remanded.