BACHE & CO. INC. v.
ERIC WAHLGREN AND OTHERS.

235 N. W. 2d 839.

November 21, 1975—No. 45555.

*Primus, Primus & Primus* and *Richard Lee Primus,* for appellants.

*Leonard, Street & Deinard, Morris M. Sherman,* and *Thomas E. Harms,* for respondent.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This appeal results from a directed verdict ordering judgment for plaintiff and dismissing defendants' counterclaim. The action, tried in Hennepin County District Court, was to recover a sum of money allegedly owed plaintiff by defendants because of a deficiency in a margin account maintained by defendants with plaintiff stockbroker. Judgment was entered on October 25, 1974, from which judgment defendants appeal.

On December 11, 1963, Eric Wahlgren, his sister, Karin Wahlgren, and his mother, Anna Maria Wahlgren, opened a joint trading account with Bache & Co. Inc., a stockbrokerage firm. The joint account agreement which was signed by all three defendants authorized Bache & Co. to—

"* * * accept from any one of us any and all orders upon said account, either for the purchase or sale of securities and/or commodities, payment of money, or any other action with reference thereto, and authorize and instruct you to deliver from time to time to any one of us individually, any or all securities and/or commodities held to the credit of said account and to pay from time to time to any one of us individually, any or all moneys held by you to the credit of said account, and we consent that con-

firmations, notices, statements of account, and communications of every kind, with reference to said account may be sent or given by you to any one of us."

Bache & Co. dealt almost exclusively with Eric Wahlgren in handling the Wahlgren account. Between 1963 and 1969 more than 140 transactions were negotiated between the parties. Until its termination in 1969, the account was managed for Bache & Co. by Robert Aws.

In trading stocks, Eric Wahlgren used funds from a joint savings account maintained in the names of all three defendants. Both Karin Wahlgren and Mrs. Wahlgren were aware that Eric was trading shares in defendants' joint stock account. Notices of each transaction as well as monthly account statements were sent to the Wahlgren residence wherein all of the defendants resided. There was one meeting between Robert Aws and Mrs. Wahlgren on January 12, 1967. On April 27, 1967, Eric Wahlgren sold short 200 shares of Control Data stock. Notices of the margin sale were promptly mailed to defendants' residence. Within 6 months after the sale, the price of the Control Data stock rose from 80 to 146, and the Wahlgren account sustained a substantial loss. Prior to the Control Data transaction, defendants' trading activities had resulted in a profit of approximately $4,500 on invested capital of between $10,000 and $15,000. Two years after the sale of the Control Data stock, the Wahlgren account was closed with a deficit of $1,431.14 when defendants failed to meet a margin call on stocks in their account. Bache & Co. brought this suit to obtain the deficit.

Mrs. Wahlgren claims that she did not understand the confirmation slips and the monthly statements which were mailed to her, and that none of the statements sent to her clearly indicated the extent of the loss she was sustaining.

The following issues are presented:

(1) Was the trial court correct in directing a verdict for the plaintiff on the issue of contract liability?

(2) Were the issues of contract modification and undisclosed principal raised in the trial court?

1. The court may direct a verdict under Rule 50, Rules of Civil Procedure, when there is no question of fact presented about which reasonable men could differ. Von Heyne v. Tompkins, 89 Minn. 77, 93 N. W. 2d 901, 5 L.R.A. (N.S.) 524 (1903). There was no dispute in the testimony or the legal briefs submitted to the court as to the authenticity of the joint account agreement between plaintiff and defendants, nor was any question raised regarding the signatures of the defendants on that agreement. There was no question of fraud or deception by Bache & Co. in making the agreement. The language of the contract is not ambiguous. Defendants operated under the terms of the agreement for approximately 6 years.

Defendants' brief on appeal admits: "On its face the Agreement gave Eric authority to operate without any consent or confirmation by his mother or his sister." The language of the contract clearly did not bind plaintiff to obtain the approval of all the defendants before conducting a transaction at the order of one of the defendants; instead the agreement authorized Bache & Co. to accept orders from "any one" of the defendants.

At trial, defendants argued that plaintiff had wantonly ignored their instructions in managing their account. Testimony at trial, however, clearly establishes that the sale of the Control Data stock on April 27, 1967, was ordered by defendant Eric Wahlgren who, according to the terms of the joint account agreement, had full authority to make such orders on behalf of all the joint account owners. Bache & Co. was bound by law to obey Eric Wahlgren's instructions regarding the account. Rude v. Larson, 296 Minn. 518, 207 N. W. 2d 709 (1973).

The case of Rheinberger v. First Nat. Bank of St. Paul, 276 Minn. 194, 150 N. W. 2d 37 (1967), closely resembles the situation in the present case. In Rheinberger, the administrator of an estate brought suit against a bank in which decedent's funds had been kept. Decedent had executed a power of attorney which

gave her son authority to withdraw the funds. The administrator alleged that the bank should be liable for allowing the son to withdraw the funds because the bank had acted in "bad faith" in that it had knowledge of the son's alleged breach of fiduciary duty to the decedent. The court found that the bank lacked actual knowledge of the son's breach of any fiduciary duty and that the bank was entitled to rely on the power of attorney:

"The power of attorney on its face gave Adams, Jr., an unlimited authority to write checks withdrawing funds from his mother's account. Its terms contained no limitations either as to the amount of money which could be withdrawn or as to the purposes for which such money had to be used. Peterson did know as a result of his conversation with Adams, Jr., that Mrs. Adams desired to execute a power of attorney because she was seriously ill and wanted her son to pay her bills for her. The nature and extent of the authority granted by a power of attorney must be determined primarily by a consideration of the actual language used in the instrument. Duluth News Tribune v. Smith, 169 Minn. 356, 211 N. W. 322. Where, as here, the language used is not ambiguous, its literal scope cannot be restricted by parol evidence as to the reasons the maker of the power of attorney had for executing it. 3 Am. Jur. (2d) Agency, §§ 28, 33. We must conclude that the son's authority was not limited solely to writing checks to pay his mother's bills." 276 Minn. 199, 150 N. W. 2d 41.

Following the reasoning of the Rheinberger case, the trial court found that "Eric had a right to do everything he did."

2. Neither defendants' answer to plaintiff's complaint, defendants' answer to plaintiff's interrogatories, nor any of the testimony introduced at trial adduces the defenses of contract modification or undisclosed principal. The counterclaims in each of the identical defendants' answers to plaintiff's complaint stated:

"That the Plaintiff and its agents willfully, wrongfully, in-

tentionally, maliciously and wantonly bought and sold various shares of corporate stock for and on behalf of the [defendants] contrary to [defendants'] instructions and contrary to the rules and regulations of the Securities Exchange Commission, the laws of the State of Minnesota and of the United States."

In plaintiff's interrogatories defendants were asked to specify which acts they alleged to be contrary to their instructions and they responded:

"The Plaintiff did not keep the answering defendants informed of the magnitude and nature of the transactions in the account of the answering defendants."

The above statements allege a breach of contract by plaintiff as agent of each of the named defendant-principals. Defendants claimed that Bache & Co. sold stock contrary to the instructions of all the defendants and without informing all the defendants of the nature and magnitude of the transactions. On appeal, defendants are arguing that the joint account agreement with Bache & Co. was modified by subsequent conduct so that Bache & Co. had a contractual obligation to inform all the defendants of the account. Defendants also argue that Bache & Co. had a duty to inform Anna Maria Wahlgren of the transactions because she was an undisclosed principal of agent Eric Wahlgren. Both arguments are contrary to the plain meaning of the joint account agreement and without evidence to support them. Moreover, neither of these arguments was presented to the trial court. This court consistently has held that issues which were not presented to the trial court may not be raised on appeal. Security Bank of Pine Island v. Holst, 298 Minn. 563, 215 N. W. 2d 61 (1974).

Affirmed.