ST. PAUL CITIZENS FOR HUMAN RIGHTS, Appellant,

Carla Messman and Craig Anderson, Plaintiffs,

v.

The CITY COUNCIL OF the CITY OF ST. PAUL, et al., Respondents,

and

Citizens Alert for Morality (CAM), Intervenor, Respondent.

Nos. 48919, 48939.

Supreme Court of Minnesota.

Aug. 10, 1979.

Connelly & Heffernan, Donald J. Heffernan, Scott F. Tilsen, and Carolyn F. Rusch, St. Paul, for appellant.

Suzanne Flinsch, City Atty., and Terry Sullivan, Asst. City Atty., St. Paul, for the City Council.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and Roger J. Magnuson, Minneapolis, for Citizens Alert for Morality.

TODD, Justice.

Plaintiffs appeal from a judgment of the Ramsey County District Court refusing to enjoin the St. Paul City Council from placing an initiative question repealing the St. Paul Gay Rights Ordinance on the ballot of the April 25, 1978, election. The issues raised by this appeal are: (1) Whether St. Paul voters can repeal an ordinance by initiative; (2) whether the ballot question was improperly drafted; (3) whether the St. Paul Human Rights Ordinance as amended conflicts with the Minnesota Human Rights Act; and (4) whether plaintiffs are de-

priv.. of their constitutional rights to due process and equal protection by repeal of the St. Paul Gay Rights Ordinance. We affirm.

In July 1974, the St. Paul Human Rights Ordinance was amended to prohibit discrimination based on "affectional or sexual preference." [1] St. Paul Legislative Code, chapter 74. In late 1977, a group of St. Paul residents circulated an initiative petition to repeal the St. Paul Gay Rights Ordinance by deleting from the St. Paul Human Rights Ordinance all reference to "affectional or sexual preference" and the provision that the requirement of religious membership be applied to all applicants by religious institutions. The petition was filed with the St. Paul City Clerk on January 17, 1978. The city clerk certified the petition to the city council which determined that the petition was sufficient and voted to place the petition on the April 25 election ballot.

Plaintiffs, an unincorporated association, filed suit on March 8, 1978, seeking to enjoin defendants from placing the petition question on the ballot and for a declaratory judgment that the petition was insufficient and that the ordinance could not be repealed by initiative. The district court denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment on March 27, 1978. We denied plaintiffs' petition for temporary relief, pending appeal on March 31, 1978.

The amended ordinance was approved at the April 25 election. Plaintiffs' motion for a temporary restraining order preventing the city council from certifying the election results was denied on April 28, and this appeal followed.

■ 1. Plaintiffs contend that voters in St. Paul cannot use the initiative process [2]

1. This amendment, which is part of the St. Paul Human Rights Ordinance, is referred to as the St. Paul Gay Rights Ordinance.

2. Initiative is the process by which a small percentage of voters may propose legislation and compel officials to submit the proposed legislation to the voters. Referendum, on the

other hand, is the process by which a small percentage of voters may delay the effective date of legislation and compel officials to submit it to the voters for approval or rejection. See, Fordham and Prendergast, *The Initiative and Referendum at the Municipal Level in Ohio*, 20 U.Cin.L.Rev. 313; 5 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.), §§ 16.52, 16.53.

to repeal an ordinance; they claim that council action or a referendum are the only means by which an ordinance can be repealed. Defendants argue that the power to legislate includes the power to repeal, that there are no restrictions on the power of initiative, and, thus, that an initiative can be used to repeal an existing ordinance. Whether or not voters have the power to repeal an existing ordinance by initiative is a question of first impression in Minnesota.

■ Municipal ordinances are enacted either by action of the city council or by the initiative process. 5 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.), § 16.01. The power to enact ordinances generally implies the power to repeal them. 6 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.), § 21.10. The city council repeals existing ordinances by enacting new ordinances. See, 6 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.), § 21.09. The voters of St. Paul are, therefore, also able to repeal existing ordinances by enacting new ordinances through the initiative process unless the grant of authority provides otherwise. See, 6 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.), § 21.11.

■ The St. Paul City Charter[3] grants the people "the right to propose ordinances, to require ordinances to be submitted to a vote, and to recall elective officials by processes known respectively as initiative, referendum, and recall." St. Paul City Charter, § 8.01. It also provides that "[a]ny ordinance may be proposed by [initiative] petition * * *." St. Paul City Charter, § 8.04. These two provisions indicate that the city charter commission intended the voters to be able to repeal or amend existing ordinances by initiative.[4] See, *State v. City of Wheeling*, 146 W.Va. 467, 120 S.E.2d 389 (1961), in which the court emphasized that the term "any proposed ordinance" must include a repealing ordinance.

■ 2. Plaintiffs allege that repealing the clause relating to religious institutions in the provision regarding discrimination in education would allow the membership requirement to be used to discriminate on the basis of race, sex, or any other protected classification. Plaintiffs claim that under this interpretation the ordinance conflicts with the Minnesota Human Rights Act, Minn.St. c. 363, and is, therefore, invalid. A municipal ordinance will be upheld unless it is inconsistent with the Federal or State Constitution or state statute. We have established four general principles for determining if a municipal ordinance conflicts with a state statute:

"(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

**3.** The powers of initiative and referendum are granted to municipalities in Minnesota by Minn.St. 410.20 which provides: "RECALL AND REMOVAL OF OFFICERS; ORDINANCES. [The city charter] commission may also provide for the recall of any elective municipal officer and for his removal by vote of the electors of such city, and may also provide for submitting ordinances to the council by petition of the electors of such city and for the repeal of ordinances in like manner; and may also provide that no ordinance passed by the council, except an emergency ordinance, shall take effect within a certain time after its passage, and that if, during such time, a petition be made by a certain percentage of the electors of the city protesting against the passage of such ordinance until the same be voted on at an election held for such purpose, and then such ordinance to take effect or not as determined by such vote."

This statute clearly permits the repeal of existing ordinances by the initiative process.

**4.** The majority of courts that have faced this issue have held that municipal voters can repeal existing ordinances by initiative. See, *Duran v. Cassidy*, 28 Cal.App.3d 574, 104 Cal. Rptr. 793 (1972); *State ex rel. Boyer v. Grady*, 201 Neb. 360, 269 N.W.2d 73 (1978); *Smith v. Township of Livingston*, 106 N.J.Super. 444, 256 A.2d 85, affirmed, 54 N.J. 525, 257 A.2d 698 (1969); *State ex rel. Sharpe v. Hitt*, 155 Ohio St. 529, 99 N.E.2d 659 (1951). But, see, *Batten v. Hambley*, 400 S.W.2d 683 (Ky.1966); *Wyatt v. Clark*, 299 P.2d 799 (Okl.1956); *Landt v. City of Wisconsin Dells*, 30 Wis.2d 470, 141 N.W.2d 245 (1966).

"(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. *Power v. Nordstrom*, 150 Minn. 228, 184 N.W. 967, 18 A.L.R. 733.

"(c) Conversely, a conflict exists where the ordinance forbids what the statute *expressly* permits. *Power v. Nordstrom*, supra. A part of the holding of that case was that an ordinance requiring the closing of movie theaters on Sunday was not inconsistent with the state Sunday closing statute since the latter, while not specifically forbidding theaters to open, did not expressly permit them to either.

"(d) It is generally said that no conflict exists ·where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute. This rule is illustrated in *State v. Clarke Plumbing & Heating, Inc.*, 238 Minn. 192, 56 N.W.2d 667. That case dealt with an ordinance requiring a license and permits to install heating systems. Defendant was denied a permit because his plans were not prepared by a registered engineer, as required by the ordinance. The court held the ordinance valid despite the existence of a similar statute that did not have as broad a coverage as the ordinance, saying that the city could well have determined that greater restriction was necessary in a community of its size. This was consistent with the statute." *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 352, 143 N.W.2d 813, 816–817 (1966).

In the present case, the Minnesota Human Rights Act forbids discrimination in education because of race, color, creed, etc. Minn.St. 363.03, subd. 5. The act, however, also provides that "[i]t is not an unfair discriminatory practice for a religious or denominational institution to limit admission or give preference to applicants of the same religion." Minn.St. 363.02, subd. 3.

The St. Paul Human Rights Ordinance as amended appears on its face to be the same as the state statute. It does not forbid what the statute permits or permit what the statute forbids; nor does it contain express or implied terms that are irreconcilable with the statute. *Mangold Midwest Co. v. Village of Richfield, supra.* We do not believe that the state statute or the ordinance as amended would be construed so as to permit discrimination by a religious institution on the basis of race, sex, or any other protected classification. We therefore find no inconsistency between the state statute and the ordinance as amended.

3. Plaintiffs also claim that the ballot question repealing the St. Paul Gay Rights Ordinance was improperly drawn because it actually contained two questions.[5] The first question dealt with deleting all reference to "affectional or sexual preference" from the St. Paul Human Rights Ordinance, and the second question dealt with deleting the clause "provided such requirement is placed upon all applicants" from the provision which permits a religious institution to require membership in its denomination as a condition of enrollment.[6]

A municipal ordinance must contain only a single subject. See, St. Paul City Charter, § 6.04. An ordinance violates this proscription only when it contains subjects which are so dissimilar as to have no legitimate connection. See, *City of Duluth v. Cerveny*, 218 Minn. 511, 16 N.W.2d 779 (1944), where we held that an ordinance providing for the forfeiture of intoxicating liquor did not violate the Duluth Charter provision that no law shall embrace more than one subject because the question of forfeiture had a logical and material connection to the subject of regulating the sale of intoxicating liquor. The purpose of such

---

**5.** Contrary to plaintiffs' contention, the city attorney did not violate the doctrine of separation of powers by drafting the ballot question. Drafting the ballot question was clearly within the duties of the city attorney as delineated in the St. Paul City Charter and the St. Paul Administrative Code.

**6.** As we stated above, the language of the religious exemption provision as amended is identical to the state statute and would not be construed so as to permit discrimination on the basis of race, sex, or any other protected classification.

a charter provision is to avoid the possibility of logrolling, deceit, or voter confusion. See, *Bogen v. Sheedy*, 304 Minn. 62, 229 N.W.2d 19 (1975), where we held that a referendum petition concerning two ordinances was valid despite the fact that it contained two questions, because the ordinances had been debated together, considered together, were passed at the same council meeting, and dealt with the same subject matter.

■ In the instant case, both questions concerned the same subject matter—the St. Paul Human Rights Ordinance. Given the public debate on the initiative, there was little possibility of deceit, voter confusion, or logrolling. Because the St. Paul City Council could have deleted all reference to "affectional or sexual preference" and the clause relating to religious institutions by enacting one ordinance, there is no reason that the voters could not do the same through the initiative process.

■ 4. Plaintiffs argue that repealing the St. Paul Gay Rights Ordinance deprives them of due process and equal protection. These arguments were not presented to the trial court; thus, they will not be considered for the first time on appeal. See, *Bache & Co. Inc. v. Wahlgren*, 306 Minn. 238, 235 N.W.2d 839 (1975); *Morton v. Board of Com'rs of Ramsey County*, 301 Minn. 415, 223 N.W.2d 764 (1974); *Tourville v. Tourville*, 292 Minn. 489, 198 N.W.2d 138 (1972).

Affirmed.

ROGOSHESKE, J., took no part in the consideration or decision of this case.

WAHL, Justice (dissenting).

I respectfully dissent from the majority holding that the voters of St. Paul can repeal an existing ordinance by the initiative process. Few courts have addressed this issue, and the case is one of the first impression in Minnesota. We must consider this decision in terms of its long-range implications and not on the basis of any one issue brought before the voters by the initiative process. Whether an existing ordinance can be repealed through the initiative process depends on the constitutional and/or statutory grant of authority.[1] See, 6 McQuillan, Municipal Corporations (3d ed. 1969 rev. vol.) § 21.11.

Initiative and referendum provisions were introduced in this country early in this century by reformers who hoped that these processes would (1) increase voter involvement in the legislative process, (2) provide a check on the domination of legislatures by special interest groups, and (3) permit voters to act more objectively by considering issues rather than personalities so that there would be greater accuracy in expressing the public will. See, Note, 5 Fla.St.U.L. Rev. 925.

The experience with initiative and referendum provisions has indicated that these hopes have been frustrated. First, ordinances enacted through the initiative process may be poorly drafted because only one person or a small group drafts the ordinance to be placed on the initiative petition. There is no review to ensure that the ordinance is internally consistent, not in conflict with existing laws or policies, or based on inaccurate factual premises. Further, there is no critical evaluation, input, or feedback from those in society who may be affected by the legislation; nor is there the refining process that occurs in the legislature. Second, the fact that the issues may be very complex necessitates long, detailed explanations and perhaps specialized knowledge in order that voters may make an informed choice. An election campaign does not lend itself to such explanations but to simple fact statements or slogans. As a result voters may be confused and make decisions, not on a factual or philosophical basis, but for emotional or political reasons. Third, the initiative process does not necessarily

---

1. Thus, those cases which have permitted such a repeal do not control the instant case. See, e. g., *Duran v. Cassidy*, 28 Cal.App.3d 574, 104 Cal.Rptr. 793 (1972); *Smith v. Township of*

*Livingston*, 106 N.J.Super. 444, 256 A.2d 85, affirmed 54 N.J. 525, 257 A.2d 698 (1969); *State ex rel. Sharpe v. Hitt*, 155 Ohio St. 529, 99 N.E.2d 659 (1951).

avoid domination of the legislature or council by special interest groups, because small groups, e. g., only eight percent of the voters of the City of St. Paul, can place an initiative question on the ballot. Because of the small voter turnout, a well-organized minority can secure or block passage of an ordinance. Thus, the initiative process is not always the voice of the people. See, Note, 48 So.Cal.L.Rev. 922; Note, 5 Fla.St. U.L.Rev. 925.

Because of these grave problems, I believe that statutory and charter provisions providing for initiative and referendum must be narrowly construed. I am confirmed in this belief by the fact that neither the framers of the state constitution nor the legislature has seen fit to provide for initiative and referendum on a statewide level. In Minnesota, the powers of initiative and referendum are confined by statute to the municipal level of government. The statute provides that municipalities "may also provide for submitting ordinances to the council by petition of the electors of such city and for the repeal of ordinances in like manner." Minn.St. 410.-20. Instead of using the statutory language, however, the St. Paul City Charter grants the people "the right to propose ordinances, to require ordinances to be submitted to a vote, and to recall elective officials by processes known respectively as initiative, referendum, and recall." St. Paul City Charter, § 8.01. The St. Paul City Charter permits voters to vote on emergency ordinances by referendum, and all ordinances submitted to the voters by initiative or referendum can be repealed in one year.

Although the repeal of an ordinance may be considered an act of proposing legislation in a broad sense, there is a recognized distinction between an initiative, which is designed to propose new legislation, and a referendum, which is designed to review existing legislation. See, *Landt v. City of Wisconsin Dells*, 30 Wis.2d 470, 141 N.W.2d 245 (1966). Under Chapter 8 of the St. Paul City Charter, the only distinction between the initiative and the referendum is the time limit in which a petition must be filed. To hold that the St. Paul voters can repeal

an existing ordinance by initiative would be to render the referendum provision meaningless, because it would eliminate the need to file the referendum petition within 45 days. It is not reasonable to suppose that the St. Paul City Charter Commission intended such a result. On this ground I would reverse the decision of the trial court.

OTIS, Justice (dissenting).

I join in the dissent of Justice Wahl for the reasons stated therein and for the further reason that the proposed ordinance embraces two unrelated subjects in violation of the city charter.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Wahl.