STATE OF MINNESOTA

IN SUPREME COURT

A16-1367

Hennepin County

Tyler Vasseur, et al., petitioners,

Respondents,

vs.

City of Minneapolis, et al.,

Appellants,

Ginny Gelms, in her official capacity as
Elections Manager, Hennepin County,

Respondent.

Per Curiam
Took no part, Stras, Lillehaug,
Chutich, and McKeig, JJ.
Peterson, Randolph, and
Bjorkman, Louise, Acting Justices[*]

Filed:  November 23, 2016
Office of Appellate Courts

_____

Paul J. Lukas, Nichols Kaster, PLLP, Minneapolis, Minnesota;

Bruce D. Nestor, De León & Nestor, LLC, Minneapolis, Minnesota;

Karen E. Marty, Marty Law Firm, LLC, Bloomington, Minnesota; and

Laura Huizar, National Employment Law Project, Washington, D.C., for respondents Tyler
Vasseur, et al.

Charles N. Nauen, David J. Zoll, Rachel A. Kitze Collins, Lockridge Grindal Nauen
P.L.L.P., Minneapolis, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Tracey N. Fussy, Brian S. Carter, Assistant
City Attorneys, for appellants City of Minneapolis, et al.

[*]     Appointed pursuant to Minn. Const. art. VI, § 2, and Minn. Stat. § 2.724, subd. 2
(2014).

Michael O. Freeman, Hennepin County Attorney, Daniel P. Rogan, Senior Assistant County Attorney, Minneapolis, Minnesota, for respondent Ginny Gelms.

Bruce Jones, Faegre Baker Daniels LLP, Minneapolis Minnesota, for amici curiae Minneapolis Regional Chamber of Commerce, Minneapolis Downtown Council, Warehouse District Business Association, Lake Street Council, Northeast Minneapolis Chamber of Commerce, Southwest Business Association, Minnesota Restaurant Association, Minnesota Lodging Association, Minnesota Grocers Association, Minnesota Retailers Association, Minnesota Recruiting & Staffing Association, and West Broadway Business & Area Coalition.

Thomas L. Grundhoefer, Edward S. Cadman, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

_____

S Y L L A B U S

The district court erred in granting respondents' petition pursuant to Minn. Stat. § 204B.44(a) (Supp. 2015), and directing the Minneapolis City Council to include a question regarding a proposed minimum-wage amendment to the Minneapolis City Charter on the ballot for the general election because the City Charter vests general legislative authority solely in the City Council.

Reversed.

O P I N I O N

PER CURIAM.

In August 2016, respondents Tyler Vasseur, et al. (collectively, "Vasseur") filed a petition with Hennepin County District Court pursuant to Minn. Stat. § 204B.44(a) (Supp. 2015), asking the court to order the Minneapolis City Council to place a charter amendment before the voters on the November 2016 general election ballot establishing a local minimum-wage standard in the City of Minneapolis. The district court granted Vasseur's

2

petition, concluding that the proposed charter amendment was the proper subject of a citizen initiative and, therefore, ordered the proposed amendment placed on the general election ballot. We granted the petition for accelerated review filed by the City of Minneapolis. This opinion confirms our order, filed August 31, 2016, reversing the district court. We reverse because we conclude that the proposed minimum-wage amendment falls within the exclusive authority vested in the City Council over legislation and policymaking.

The respondents are members of Vote for 15MN, a coalition of organizations and individual citizens working together to advocate for minimum-wage standards for those who live and work in the City of Minneapolis. In April 2016, Vote for 15MN began collecting signatures on a petition to amend the Minneapolis City Charter to require provisions establishing minimum-wage standards and regulations. By June 2016, Vote for 15MN had collected the required number of signatures for a petition to amend the City Charter, and submitted the petition to the Minneapolis Charter Commission. The Commission transmitted the petition to the Minneapolis City Council. On July 20, 2016, the City Clerk certified that Vote for 15MN's petition met the statutory signature requirements. *See* Minn. Stat. § 410.12, subd. 1 (2014) (stating that a petition to amend a municipal charter must be signed by "voters equal in number to five percent of the total votes cast at the last previous state general election in the city").

The proposed charter amendment sets standards and regulations for minimum wages paid to those who work in the City ("the wage amendment"). In general, the wage amendment aims to address "[i]ncome inequality, low wages, and a high cost of living" based on the City's interest in promoting the "health, safety, and welfare of workers, their

3

families, and their communities" by gradually phasing in minimum-wage standards for employees who work within the geographic boundaries of the City.[1] Additional provisions address enforcement, penalties for violating the law, and public outreach and education.

The Minneapolis City Attorney issued an opinion to the City Council on whether the wage amendment is "a proper subject for a charter amendment." Reasoning that the wage amendment "is legislative in nature," and the "Minneapolis City Charter does not provide for voter initiatives for the passage of ordinances by a ballot referendum," the City Attorney recommended that the City Council "decline to place the provision on the ballot." The City Council voted not to include the wage amendment on the ballot for the general election.

Vasseur filed a petition pursuant to Minn. Stat. § 204B.44(a) with Hennepin County District Court.[2] Arguing that the City Council can refuse to put a proposed charter amendment on the ballot only if it is "manifestly unconstitutional or in clear conflict with existing state law," Vasseur contended that the wage amendment "constitutes a proper subject for a charter amendment" because city charters "are not narrowly limited to matters concerning the structure, authority and procedures of government." Vasseur asked the district court to order the City to place the wage amendment on the ballot because the City

---

[1]     The wage amendment includes provisions that distinguish between employers based on the number of employees, require a minimum number of hours worked to qualify for the minimum wage, and explain how gratuities are factored into the wage calculation.

[2]     Minnesota Statutes § 204B.44(a) allows an individual to file a petition seeking the correction of any error or omission in the preparation or printing of a ballot for an election.

4

Council "had no basis on which to deem the proposed Amendment unconstitutional" and therefore had "a duty to" put it on the ballot.

The district court granted Vasseur's petition. The court noted that the "state constitution does not identify what matters may be included in a charter amendment," but after review of the statutory authority for charter cities, Minn. Stat. ch. 410 (2014), the court concluded that section 410.07 "defines what legislative powers can be included in a charter" and "a charter, in turn, distributes those legislative powers to a City Council (through enacting ordinances) and/or to citizens (through initiative and referendum) while itself all the while being constitutionally subject to citizen amendment [by petition]." The court also relied on our decision in *Markley v. City of St. Paul*, 142 Minn. 356, 172 N.W. 215 (1919), to conclude that employment matters are a proper subject for municipal charter provisions.

The City filed a notice of appeal with the court of appeals and, at the same time, filed a petition for accelerated review with our court. Minn. R. Civ. App. P. 118 ("Any party may petition the Supreme Court for accelerated review of any case pending in the Court of Appeals . . . ."). We granted the City's petition for accelerated review.

I.

On appeal, the City asserts that the district court erred in granting Vasseur's petition because the Minneapolis City Charter vests in the City Council sole responsibility for legislation regarding the general welfare of City residents. Because Minneapolis did not choose, in its charter, to permit citizens to "submit[] ordinances to the council by petition" of those residents, Minn. Stat. § 410.20, the City argues that the wage amendment conflicts

5

with state law and therefore cannot be placed on the ballot. Vasseur urges us to affirm the district court, arguing that the wage amendment must be included on the ballot because Vote for 15MN collected the number of signatures necessary to place the charter amendment before Minneapolis voters. The parties' arguments, requiring us to interpret provisions in state statute and in the City Charter, present a legal question subject to de novo review. *Pawn Am. Minn., LLC v. City of St. Louis Park*, 787 N.W.2d 565, 570 (Minn. 2010) (stating that the court reviews issues of statutory construction de novo); *see also City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 8 (Minn. 2008) ("The application of statutes, administrative regulations, and local ordinances to undisputed facts is a legal conclusion and is reviewed de novo.").[3]

Minneapolis is a home-rule charter city. *See* Minn. Const. art. XII, § 4 (permitting "[a]ny local government unit . . . [t]o adopt a home rule charter for its government"); Minn. Stat. § 410.04 (authorizing "[a]ny city in the state" to "frame a city charter for its own government in the manner" prescribed by chapter 410). Minnesota Statutes § 410.07 describes the "framing" of a municipal charter. "Subject to the limitations" in chapter 410, a charter "may provide for any scheme of municipal government not inconsistent with the constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions." Minn. Stat.

---

[3]     The wage amendment includes a statement regarding the impact of income inequality on the economic and social concerns of City residents. Policy arguments that might support a proposed charter amendment are not relevant to our analysis. *See City of Morris*, 749 N.W.2d at 13 ("[R]egardless of our view on the merits of [the municipality's] policy arguments, we are bound to apply the policy decisions adopted by the legislature . . . .").

§ 410.07. A municipal charter may also "provide for submitting ordinances to the council by petition of the electors of [the] city." Minn. Stat. § 410.20. Amendments to a municipal charter may be proposed by the city's charter commission and shall be proposed "upon the petition of voters equal in number to five percent of the total votes cast" at the last previous general election. Minn. Stat. § 410.12, subd. 1. Proposed amendments must outline "any proposed new scheme or frame work of government" and "inform the signers of the petition as to what change in government is sought to be accomplished by the amendment." *Id.* Additional sections in chapter 410 address matters that may be governed by a municipal charter and the powers conferred by the charter, *see, e.g.*, Minn. Stat. §§ 410.09, .121, .18. For our purposes, it is noteworthy that apart from the right to propose charter amendments by citizen petition, the matters that charter provisions may address are framed in permissive terms. *See* Minn. Stat. § 645.44, subds. 15, 16 (2014) (stating "may" is permissive, "shall" is mandatory); *see, e.g.*, Minn. Stat. § 410.07 (stating a charter "*may* provide for any scheme of municipal government").

With these statutory provisions in mind, we turn to the form of government adopted in the Minneapolis City Charter. *See Park v. City of Duluth*, 134 Minn. 296, 298, 159 N.W. 627, 628 (1916) ("The Constitution and general laws of the state confer upon the people of a city the power to frame and adopt its own charter."). The Minneapolis City Charter is the "basis for the conduct of all of the City's business." Minneapolis, Minn., City Charter § 1.3(a) (2016). "The governing body is the City Council, in which the City's general legislative and policymaking authority resides." *Id.* § 4.1(a). The City Council acts on the City's behalf unless the "charter reserves the action for a different board, commission, or

committee." *Id.* § 4.1(b)(1). The parties agree that the Minneapolis City Charter does not vest in its citizens the right to petition for enactment of ordinances, *see* Minn. Stat. § 410.20. The parties also agree that the Minneapolis City Charter does not authorize the enactment or repeal of ordinances through citizen initiatives and referenda.[4] Most importantly, under the Minneapolis City Charter, the City Council is the exclusive body that holds "general legislative and policymaking authority." City Charter § 4.1(a).

Because the plain language of the Minneapolis City Charter places the responsibility for the general welfare of City residents in the City Council, it is clear that the wage amendment is improper. There is no doubt that the wage amendment constitutes an exercise of general legislative authority. Indeed, Vasseur in his brief expressly characterizes the wage amendment as an expression of legislative authority, arguing that if adopted, the amendment "would protect the welfare of city residents." Nothing in the Minneapolis City Charter, however, authorizes an exercise of legislative action through a citizen petition that circumvents the City Council's authority for legislation and policymaking. *See, e.g.*, *Berent v. City of Iowa City*, 738 N.W.2d 193, 212 (Iowa 2007) (stating that "[m]atters of policy or administration . . . are to be processed through the ordinary channels of representative democracy . . . subject to the give and take of the deliberative processes of representative government" rather than "implanted in a city

---

[4]    *See St. Paul Citizens for Human Rights v. City Council*, 289 N.W.2d 402, 404 n.2 (Minn. 1979) ("Initiative is the process by which a small percentage of voters may propose legislation and compel officials to submit the proposed legislation to the voters. Referendum, on the other hand, is the process by which a small percentage of voters may delay the effective date of legislation and compel officials to submit it to the voters for approval or rejection.").

charter"); *Cheeks v. Cedlair Corp.*, 415 A.2d 255, 261 (Md. 1980) ("A charter amendment . . . differs in its fundamental character from a simple legislative enactment. Its content cannot transcend its limited office and be made to serve or function as a vehicle through which to adopt local legislation."); *see also Haumant v. Griffin*, 699 N.W.2d 774, 781 (Minn. App. 2005) (noting that "Minneapolis residents are not permitted to directly implement legislation by petition" that their elected representatives, "so far, have refused to" pursue), *rev. denied* (Minn. Aug. 25, 2005).[5] Given that the wage amendment conflicts with the permissible form of government adopted in the Minneapolis City Charter, we conclude that the City Council properly refused to put the amendment to a vote at the 2016 general election.

In urging us to reach the opposite conclusion, Vasseur contends that the powers of a home-rule charter city, and therefore the powers vested in the residents of that city, "are liberally construed." Thus, if a city has the power to legislate under a charter, Vasseur argues, then that city's residents hold the same legislative power. Next, relying on *Markley v. City of St. Paul*, 142 Minn. 356, 172 N.W. 215 (1919), Vasseur argues that there is no subject-matter restriction on permissible charter amendments. Instead, Vasseur argues, charter provisions intended to promote the general welfare of a municipality's residents, such as a minimum-wage standard, permissibly regulate "local municipal functions,"

---

[5] The district court declined to consider *Haumant*, concluding the discussion in that published opinion regarding prohibited initiative petitions was non-binding dicta. We need not decide whether this conclusion is correct because *Haumant* is not binding on our court. We simply note that *Haumant* is consistent with the views expressed by other courts that have considered this question.

Minn. Stat. § 410.07. Finally, Vasseur contends that the regulation of "local municipal functions" broadly encompasses all powers not expressly or impliedly withheld by the Legislature, including the regulation of entities doing business in the city when those regulations provide for the general welfare of the city's residents. We disagree with each of Vasseur's three arguments.

First, Vasseur's effort to equate the legislative power held by the city with powers held by the city's residents assumes that the powers expressly granted to a municipality in a charter are implicitly granted in equal measure and to the same degree to the residents of that municipality. This assumption ignores the plain language of chapter 410. While the powers conferred on a municipality by a home-rule charter may be broad, the charter "may provide for any scheme of municipal government," Minn. Stat. § 410.07. Under the plain language of this statute, a municipality may adopt charter provisions that vest some powers in its government and *not* in its residents, or the municipality may adopt charter provisions that vest some powers in its government and in its residents. *See, e.g.*, Minn. Stat. § 410.20 (stating a charter "may also provide for submitting ordinances to the council by petition of the electors of such city"). Thus, *the form* of the municipal government adopted in a charter defines the powers held by that government and by its residents. In Minneapolis, that form vests legislative and policymaking authority *solely* in the City Council.[6]

---

[6] In contrast, the charter we considered in *St. Paul Citizens for Human Rights* granted to its residents " 'the right to propose ordinances, to require ordinances to be submitted to a vote, and to recall elective officials by processes known respectively as initiative, referendum, and recall.' " 289 N.W.2d at 405 (quoting St. Paul, Minn., City Charter § 8.01 (1979)).

10

The fact that Vote for 15MN collected the requisite number of signatures in order to request that the wage amendment be included on the ballot does not compel a different outcome. This is so because we have said that charter provisions (and therefore charter amendments) must be consistent with state law and state public policy. *See State ex rel. Lowell v. City of Crookston*, 252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958) ("The adoption of any charter provision contrary to the public policy of the state, as disclosed by general laws or its penal code, is also forbidden."); *see also St. Paul Citizens for Human Rights v. City Council*, 289 N.W.2d 402, 405 (Minn. 1979) ("A municipal ordinance will be upheld unless it is inconsistent with the Federal or State Constitution or state statute."). Because "state law may limit the power of a city to act in a particular area," *City of Morris*, 749 N.W.2d at 6, we have declined to require the futile gesture of placing an unconstitutional or unlawful proposed charter amendment on the ballot. *Hous. & Redev. Auth. v. City of Minneapolis*, 293 Minn. 227, 234, 198 N.W.2d 531, 536 (1972) (holding that the district court properly enjoined an election on a proposed charter amendment "rather than permit the administration and the voters of the city of Minneapolis to experience the frustration and expense of setting up election machinery and going to the polls in a process which was ultimately destined to be futile"); *State ex rel. Andrews v. Beach*, 155 Minn. 33, 35-36, 191 N.W. 1012, 1013 (1923).

Second, *Markley* does not speak to the scope of permissible regulations in a municipal charter and it therefore does not control the outcome of this appeal. In *Markley*, a provision in the St. Paul City Charter extended benefits to injured *city employees*. 142 Minn. at 357, 172 N.W. at 215. When an injured firefighter employed by the city

11

sought benefits under this provision, the city argued that benefits were only available to its employee under the workers' compensation provisions enacted by the Legislature. *Id.* at 357, 172 N.W. at 215. We stated that the authority to adopt a municipal charter includes the authority to adopt provisions that "embrace[] any subject appropriate to the orderly conduct of municipal affairs." *Id.* at 357, 172 N.W. at 216. We recognized that although the Legislature established policy regarding compensation for injured employees, "a city operating under a home rule charter [may] provid[e] additional compensation to a fireman injured in the course of his employment." *Id.* at 358, 172 N.W. at 216. *Markley*, in other words, recognized that in the "orderly conduct of municipal affairs," *id.* at 357, 172 N.W. at 216, a municipality may adopt charter provisions that address the relationship between the municipality *and its employees*.[7] *Markley* does not stand for the proposition that municipal residents can petition for charter amendments in order to regulate employment or business relationships to which the municipality is not a party.

Third, we cannot conclude that the regulation of "local municipal functions," Minn. Stat. § 410.07, includes the right of municipal residents to petition for charter provisions that regulate the general welfare of a municipality's residents. The City argues that the regulation of "local municipal functions" is limited to charter provisions that address the "form, structure, and functioning" of municipal government. Permissible charter provisions are, according to the City, narrow in scope because a charter governs the

---

[7] The Minneapolis City Charter includes provisions regarding City "officers" and "employees," "classified" and "unclassified" service of those officers and employees, and employment rules and regulations governing City officers and employees. *See* City Charter art. VIII.

12

functions of the municipal government, while ordinances enacted in an exercise of a municipality's legislative powers regulate the functions and activities of persons, businesses, or entities residing or operating in the municipality. *See, e.g.*, *Oakman v. City of Eveleth*, 163 Minn. 100, 106, 203 N.W. 514, 516 (1925) (explaining that a charter provision granting power to the city's residents "to enact legislation has reference to ordinances of general legislation which lay down some permanent and uniform rule of law for the guidance of the municipality and the people" and stating that "[a]n ordinance is a local law").[8]

We do not need to define the precise meaning of the phrase "local municipal functions" in Minn. Stat. § 410.07. Vasseur acknowledges that the wage amendment proposes to regulate businesses operating in the City in order to advance the general welfare of the City's residents. Relying on the City's authority to "exercise any power that a municipal corporation can lawfully exercise at common law," City Charter § 1.4(a), Vasseur contends that citizen petitions to amend the charter can address all subjects of interest to the City or its residents, including matters of general welfare. *See, e.g.*, *State ex rel. Zien v. City of Duluth*, 134 Minn. 355, 360, 159 N.W. 792, 794 (1916) (recognizing that a clause granting the municipality "all municipal power" is "obviously broad enough to include all those powers which are generally recognized as powers which may properly be given to and be exercised by municipal corporations"); *State ex rel. Bacigalupo v.*

---

[8]    In ordering the City to place the wage amendment before the voters, the district court relied on the fact that the City Charter includes provisions relating to liquor sales and regulating slaughterhouses. Whether those provisions are properly included in the Minneapolis City Charter is not before us and so we express no opinion about them.

*O'Connor*, 115 Minn. 339, 340, 132 N.W. 303, 303 (1911) (stating that a municipality's "police power extends to all matters where the general welfare, morals, and health of the community are involved" and permits "the regulation of business affairs").

The general welfare clause in the Minneapolis City Charter may be broad, but the Charter vests the exercise of that power in "the boards, commissions, committees, departments, and officers" through which the City acts. City Charter § 1.4(a). Thus, regardless of the breadth of the general welfare clause or the precise contours of the phrase "local municipal functions" in Minn. Stat. § 410.07, the Minneapolis City Charter does not extend to its residents the authority to "exercise any power that a municipal corporation can lawfully exercise at common law," because nothing in the plain language of this provision confers that power on the City's residents, City Charter § 1.4(a).

Because Minneapolis residents do not have legislative and policymaking authority under the City Charter, we hold that the district court erred in granting the petition and ordering the City to place the wage amendment on the ballot for the general election.

Reversed.


STRAS, LILLEHAUG, and CHUTICH, JJ., took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.