Cedric SCOFIELD, upper Midwestern Region representative sitting on the National Executive Committee of the Reform Party of the United States of America, et al., Petitioners,

v.

Mary KIFFMEYER, Secretary of State for the State of Minnesota, et al., Respondents.

No: C9–00–1622.

Supreme Court of Minnesota.

Dec. 21, 2000.

Mark A. Olson, Burnsville, for petitioners.

Mike Hatch, Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, for respondents.

## OPINION

BLATZ, Chief Justice.

Petitioners, representatives of the Reform Party of the United States of America, the Reform Party of Minnesota, and the Buchanan Reform Presidential Committee, asked this court to order the Minnesota Secretary of State to change the designated party or principle of a president/vice president ticket set to appear on Minnesota ballots in the November 7, 2000, general election. On September 27, 2000, we issued an order denying the petition and indicating that an opinion would follow. We hold that the potential for confusion among voters does not outweigh the strong presumption in favor of giving effect to the intent of the nominators as stated on the nominating petition.

On August 25, 2000, a petition was filed with the secretary of state containing the signatures of at least 2,000 nominators for John Hagelin for president and Nat Goldhaber for vice president. The petition nominated presidential electors "representing the Reform Party."

On September 12, 2000, a nominating petition was filed with the secretary of state containing the signatures of at least 2,000 nominators for Pat Buchanan for president and Ezola Foster for vice president. That petition nominated presidential electors "representing Reform Party Minnesota." Petitioners note that Buchanan/Foster and Hagelin/Goldhaber each fought for and laid claim to the nomination of the national Reform Party of the United States of America. Petitioners now argue that that dispute was decided in favor of the Buchanan/Foster ticket by the issuance of a preliminary injunction by the Superior Court of California for Los Angeles County, South District, enjoining the use of the name of the Reform Party of the United States of America in promotion of Hagelin/Goldhaber as candidates.[1]

The secretary of state accepted both petitions as filed and determined that each met the statutory requirements for nominating petitions. *See* Minn.Stat. § 204B.07 (2000). The time for filing petitions closed on September 12, 2000. Based on the secretary's certification of the ballot, Hagelin and Goldhaber were set to appear on the general election ballot with the designation Reform Party and Buchanan and Foster with the designation Reform Party Minnesota.

The petition before the court is brought pursuant to the "errors and omissions" provision of Minnesota election law. *See* Minn.Stat. § 204B.44 (2000). Under that statute, the court is authorized to act to prevent an error or omission in the placement or printing of the name or description of any candidate on any official ballot. *See id.* When the petition was received, this court issued an order for the secretary of state to appear and show cause for refusing to correct the alleged error and to take all steps necessary to prevent the ballots from being printed until the matter was resolved.

The secretary of state argues that there is no error within the meaning of the statute. The petitioners assert that the Hagelin/Goldhaber ticket has agreed to change its party/principle designation to either "independents" or "Natural Law Party." Representatives of the Hagelin/Goldhaber ticket appeared at oral argument and did not oppose the petition pursuant to an agreement with petitioners.

In preparing ballots, election officials are instructed: "The political party or political principle of the candidate *as stated on the petition* shall be placed after the name of a candidate nominated by petition." Minn.Stat. § 204D.13 (2000) (emphasis added); *see also* Minn.Stat. § 204B.07 (nominating petition for office is required to state the candidate's political

---

1. Petitioners assert their petition is also supported by a September 13, 2000, decision of the Federal Election Commission determining that Buchanan/Foster were the candidates for the Reform Party and, as such, were entitled to federal grants for their campaigns.

party or political principle). Petitioners do not allege, and there is no question that the secretary of state followed this provision in certifying the candidates consistent with the nominating petitions. Instead petitioners claim that the potential for confusion among voters warrants a change in the party/principle designation by the secretary of state consistent with petitioners' agreement with the Hagelin/Goldhaber ticket.

Minnesota's election laws have historically precluded a candidate from claiming affiliation with a party or principle where that party or principle shares the name or part of a name of an established political party. The current version of that statute provides:

> A major political party which has adopted a party name is entitled to the exclusive use of that name for the designation of its candidates on all ballots, and no candidate of any other political party is entitled to have printed on a ballot as a party designation any part of that name.

Minn.Stat. § 202A.11 (2000); *see also* Minn.Stat. § 204B.07, subd. 1(c) (2000) ("No part of the name of a major political party may be used to designate the political party or principle of a candidate who files for a partisan office by nominating petition * * *."). The so-called party name protection act extends only to major political parties in Minnesota. *See* Minn. Stat. § 202A.11. A major political party is a party that maintains a party organization and either presented a candidate in the last preceding general election who received at least five percent of the vote or whose members, totaling at least five percent of the vote, presented a petition to the secretary of state for placement on the ballot. *See* Minn.Stat. § 200.02, subd. 7 (2000). Neither the Reform Party nor Reform Party Minnesota is a major political party; therefore, neither is entitled to the protections of the party name protection act.

Although the party name protection act applies only to major political parties, petitioners urge us to consider the potential voter confusion created by the use of similar party names. This court has stated:

> [V]iewing [the party name protection act] as expressive of a legislative intention to prevent confusion which might be engendered by the use of similar political designations, we will examine situations outside the purview of the statute to ascertain whether or not confusion, or the likelihood of confusion, would exist as a result of the designation desired by nonparty candidates.

*Shaw v. Johnson*, 311 Minn. 237, 239–40, 247 N.W.2d 921, 922 (1976). In *Shaw* a candidate filed a nominating petition requesting to be designated "independent" on the ballot. *See id.* The election officer, after consultation with the secretary of state, denied the request for designation on the basis that the term independent had been adopted by a major political party, the Independent–Republicans of Minnesota, and the party name protection act prevented its use by any other candidate. *See Shaw*, 311 Minn. at 238, 247 N.W.2d at 922. The district court reversed the election judge's decision, finding that there was no danger of confusion, and this court affirmed, refusing to order a change in the party or principle reflected in the nominating petition. *See id.* at 239–40, 247 N.W.2d at 922. Nonetheless, this court reserved our authority to do so to prevent confusion with respect to a candidate not affiliated with any party. *See id.* at 240, 247 N.W.2d at 923.

Petitioners appear to assume that voters will be confused to a degree significant enough to warrant action by the court. However, this is not the first time similar party names have appeared on the ballot. In the 1900 presidential election, candidates from the Socialist Democrat and Socialist Labor parties appeared on the ballot. *See* Secretary of State, *Minnesota Legislative Manual 1999–2000* 325 (1999).

Indeed, there is some indication that the legislature intended to limit the circumstances in which this court could change a party designation appearing on a ballot based on similarity in party names. In *Davidson v. Hanson*, 87 Minn. 211, 92 N.W. 93 (1902), this court extended the protections of the party name protection act to the Socialist Labor party, which had obtained less than one percent of the vote in the most recent general election. This court prohibited a candidate from a distinct political organization from using the party label "Socialist" as had appeared on the candidate's nominating petition, because that word belonged to the Socialist Labor party under the party name protection act. *See id.* at 220, 92 N.W. at 96. In the following session of the legislature, the act was amended to limit its protection to parties that received at least one percent of the votes cast in the state. *See* Act of April 14, 1903, ch. 232, 1903 Minn. Laws 337, 338. Now those protections are limited to parties that received at least five percent of the vote in the last election or where a commensurate number of party members petition the secretary of state for placement on the ballot. *See* Minn.Stat. § 200.02, subd. 7; Minn.Stat. § 202A.11. Therefore, the limited reach of the party name protection act is intentional.

■ In light of this legislative intent, petitioners must demonstrate a significant degree of confusion before we will act to modify the ballot. In this case the only difference between the party names is the geographic descriptor "Minnesota." However, as discussed above, mere similarity in party names does not warrant relief.

Petitioners do not allege whether and how the designation Reform Party Minnesota will confuse voters or work to the advantage of one candidate over another. We might speculate that a voter would not be able to distinguish the candidates based on the similarity in party name. However, those interested in Reform Party candidates would arguably be aware of the split in the party over the nomination of these candidates, which was widely reported in the media. *See, e.g.*, Muriel Dobbin, *Buchanan Schism May Kill Reform Party*, Star Tribune, Sept. 17, 2000, at A26; Mark Helm, Hearst Newspapers, *Buchanan Is Awarded Federal Election Money*, St. Paul Pioneer Press, Sept. 13, 2000, at 10A. Thus, while there exists some potential for confusion, we are left to speculate as to its magnitude and significance to voters.

Balanced against the potential for confusion is the intent expressed by at least 2,000 Minnesota registered voters that their candidates and presidential electors appear as representatives of the Reform Party. Those Minnesota voters indicated their desire to have Hagelin and Goldhaber on the ballot as representatives of the principles espoused by the Reform Party, and we do not lightly set aside their wishes. Instead we find a strong presumption in favor of giving effect to the wishes of those nominators.

Indeed, this court has allowed the party name on the ballot to differ from that on the nominating petition in only two instances. In both instances the court acted to give effect to the party name protection act, however. *See Lind v. Scott*, 87 Minn. 316, 318, 92 N.W. 96, 97 (1902) (holding petition nominating candidate under Social Democratic party violated party name protection act); *Davidson v. Hanson*, 87 Minn. 211, 220, 92 N.W. 93, 96 (1902) (holding petition nominating candidate under Socialist party violated the act where Socialist Labor party was entitled to protection of party name protection act). Thus, this court has not in the past ordered a change in the party or principle designation of a candidate on the ballot in the absence of a violation of the party name protection act.

The intent of the nominators must be given effect. We have stated that our election laws are "bottomed on the theory that * * * the people ought to be permitted to know whom and what they are voting for." *Foley v. Donovan*, 274 Minn. 501, 503, 144 N.W.2d 600, 603 (1966). The

same might be said for nominating petitions. The U.S. Supreme Court has acknowledged a state's legitimate interest in making sure that minor parties are "actually supported, on their own merits, by those who have provided the statutorily required petition." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 366, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997). To allow a change in the party designation of a candidate after the petition has been filed would leave future nominators uncertain of whether the candidate will appear on the ballot as nominated. Given that the party often represents the candidate's guiding principles, a change in the party designation is a significant alteration of the nominators' intent.

█ Moreover, while candidates Hagelin and Goldhaber might agree to be labeled as independents or as representatives of the Natural Law Party, they do not speak for the nominators who understood that the candidates would carry the banner of the Reform Party. Indeed, the intent of the nominators is clear, especially in light of the fact that Hagelin/Goldhaber laid claim to the nomination of the Reform Party. Their nominators may have nominated them on the assumption or hope that they would be the Reform Party candidates nationally. Where the affiliation with the party of nomination is strong, as here, we will not lightly disturb the intent of the nominators.[2]

The potential for confusion in the ballot as proposed does not outweigh the strong presumption in favor of giving effect to the intent of the nominators that the Hagelin/Goldhaber ticket represent the Reform Party. While there may be circumstances where the possibility of confusion is so great as to warrant this court ordering a change in party designation, we decline to order the secretary of state to change the party designation of the Hagelin/Goldhaber ticket.

Order to show cause discharged.

LANCASTER, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. The court's conclusion that voters will not be confused by having Hagelin/Goldhaber designated on the ballot under the name of "Reform Party" and Buchanan/Foster designated on the ballot under the name of "Reform Party of Minnesota" defies common sense and is wrong. This is not a case in which two sets of candidates for election merely want to use similar party designations on the ballot. The recent history of the Reform Party, both locally and nationally, is, at best, confusing. Moreover, it is not at all clear that there is such an entity as the "Reform Party."

In March of 2000, a faction of the Reform Party of Minnesota officially separated from the national party, the Reform Party of the United States of America (RPUSA). *See* Robert Whereatt, *Reform Party Splits From National Party,* Star Tribune, Mar. 5, 2000, at B1. The faction of the Minnesota party that separated became the Independence Party. The faction that did not separate from the RPUSA retained the name Reform Party of Minnesota. *See id.* In August of 2000, the RPUSA split into two factions. One

---

2. We are especially reluctant to do so when the proposed alternatives would either mislead or confuse voters. Petitioners' proposal that Hagelin/Goldhaber be designated independents is inaccurate, as the term conveys to the voter that the candidate has no allegiance to or affiliation with a particular party. *See Shaw,* 311 Minn. at 240, 247 N.W.2d at 923 (noting that persons who are independents refuse to become formally affiliated with any political party). Furthermore, voters might be confused by an "independent" designation for the Hagelin/Goldhaber ticket, in light of the recent name change of a previous incarnation of Reform Party Minnesota to the Independence Party. Finally, there is no indication that the nominators would have nominated Hagelin/Goldhaber had they known they stood for principles espoused by the Natural Law Party. Therefore, the proposed alternatives are either inaccurate or confusing to voters.

faction chose to support Buchanan/Foster as the RPUSA's nominees for the offices of President and Vice President of the United States. The other faction supported Hagelin for president. The two factions have been in a battle for control of the RPUSA's assets and name since the August split.[1] In August, the Natural Law Party, which had nominated Hagelin for president in 1992 and 1996, joined forces with the faction of the RPUSA that supported Hagelin and nominated Hagelin/Goldhaber for the offices of President and Vice President of the United States. *See* Eun–Kyung Kim, *Hagelin Announces Party Alliance,* Associated Press, Sept. 1, 2000 <http://www.hagelin.org/press_articles/ap_9-1-00.htm>.

This history, combined with the party designations permitted by the court, will create voter confusion with the Minnesota ballot that cannot be overcome. A voter who supports the platform of the RPUSA will find two sets of candidates for president and vice president, each with designations that might reasonably be understood to represent that platform. But a voter who supports the platform of the alliance between the Natural Law Party and those who split from the RPUSA will have no way of identifying which of the two tickets for the offices of president and vice president support that platform, even though candidates supporting that platform are on the ballot.

While the court holds that respect for the intent of the Hagelin/Goldhaber nominators counterbalances the likelihood of voter confusion, the political flux that existed during the time in which the nominators gathered and presented signatures casts doubt on what the nominators intended by the "Reform Party" designation. Moreover, given recent history, it is not clear that the Hagelin/Goldhaber nominators would want them designated as "Reform Party" candidates.

In order to avoid confusion, I would order the designation "Natural Law Party" for Hagelin/Goldhaber.

**1.** After the RPUSA split, each state had to decide who would receive the Reform Party designation on its ballot before ballots could be printed. States were making those decisions in late August and September by various means. *See* Mike Glover, *Luck of the Draw: States Draw Names to Settle Reform Party Ballot Battles,* Associated Press, Aug. 25, 2000 <http://www.abcnews.go.com/sections/politics / DailyNews / reform_lotteries000824.html>; Associated Press, *Reform Party State by State,* Aug. 25, 2000 <http://europe.cnn.com / 2000 / ALLPOLITICS / stories /08/24/reformparty.ap/>. As of October 3, Hagelin's name will appear on 38 of the 50 state ballots. *See John Hagelin/Nat*

*Goldhaber 2000* (visited Oct. 17, 2000) <http://www.hagelin.org / ballot_access / index.htm>. He will be designated "Natural Law Party" on 27 of those ballots; only four states besides Minnesota will use the designation "Reform Party" for the Hagelin/Goldhaber ticket. *See id.* In some states, Hagelin's campaign willingly gave up the Reform Party designation. *See, e.g.,* Reuters News Service, *Buchanan Wins Spot on Florida Presidential Ballot,* Oct. 2, 2000 <http://buchananreform.org / library / default.asp?id=149> (reporting that the Buchanan and Hagelin factions, in Florida state court, stipulated to an agreement that on Florida's ballot Buchanan would be designated Reform Party and Hagelin designated Natural Law Party).